## MITCHELL et al. v. SAN ANTONIO PUBLIC SERVICE CO.
### No. 1163–5470.

Commission of Appeals of Texas, Section B. Feb. 4, 1931.

Tyler & Hubbard, Jas. B. Hubbard, and E. C. Zellner, all of Belton, and Sehorn & Sehorn, of San Antonio, for plaintiffs in error.

Templeton, Brooks, Napier & Brown and C. R. Kennon, all of San Antonio, for defendant in error.

SHORT, P. J.

We adopt, as being substantially correct, the following statement of the nature of this case and the result of the suit made by plaintiffs in error in their application for the writ of error:

"This was a suit by Pauline Jennings against San Antonio Public Service Corporation, alleging that while a minor she was injured through the negligence of defendant in December, 1920, she then being a minor about fourteen years of age and an orphan; that she was riding in an automobile and was struck by one of defendant's cars in San Antonio and that she sustained injuries of serious and permanent nature and had never recovered therefrom. That shortly after she sustained the injuries her legal guardian, J. C. Preston, filed a suit in one of the District Courts in San Antonio in her behalf against defendant; that thereafter without the knowledge of the said J. C. Preston or his attorneys, or of the court defendant made a pretended settlement, paying to a sister of plaintiff for plaintiff the sum of $750.00 and that the original suit was dismissed for want of prosecution, and that plaintiff, as soon as she became of age, repudiated said pretended settlement, which was grossly inadequate, and procured by fraud, and asked for a judgment in the sum of $50,000.00.

"Defendant answered by general demurrer, and set up a judgment of the Justice Court in St. Louis, Missouri, wherein plaintiff's sister appeared as next friend and a judgment was entered for $50.00, pleading said judgment as res adjudicata and setting up contributory negligence of plaintiff.

"Plaintiff filed her supplemental petition in which she alleged that the pretended settlement and judgment of the Justice Court in St. Louis was procured by fraud and were of no force and effect, and were consummated without the knowledge of her legal guardian and were grossly inadequate and constituted a fraud upon the District Court in Bexar County where the original suit filed by her guardian was pending, and that no suit could be maintained in any justice court in Missouri, and that no one other than her legal guardian had any legal authority to submit to the jurisdiction of any other court, and that said court had no jurisdiction over the parties or the subject matter involved, and prayed as in her original petition.

"Defendant answered in its first supplemental answer by demurrers and exceptions, all of which were overruled by the court, except one addressed to plaintiff's prayer for damages accruing subsequent to the St. Louis judgment.

"The cause was tried to a jury and at the conclusion of all the testimony, the court instructed a verdict for defendant, which was excepted to by plaintiff. And on such instructed verdict the court entered a judgment in favor of defendant.

"Plaintiff seasonably filed motions for new trial which were overruled by the court, and plaintiff duly excepted and gave notice of appeal.

"Shortly after the judgment was entered, plaintiff died, her death was suggested and her only surviving heir at law, Anna Jennings Mitchell, joined pro forma by her husband, were substituted as parties plaintiff.

"Plaintiffs in error took the cause by writ of error to the Court of Civil Appeals for the Fourth Supreme Judicial District, which affirmed the judgment of the trial court, and overruled plaintiff in error's motion for rehearing."

One of the two assignments of error presented in the application for the writ of error is to the effect that the Court of Civil Appeals erred in sustaining the action of the trial court in giving a peremptory instruction in favor of the defendant in error to the jury.

The record shows without dispute the Pauline Jennings was a minor 14 years old at the

time she was injured; that she was an orphan living with her sister, who was not then quite 21 years old; that J. C. Preston was the legal guardian of both, and that he filed in one of the district courts of Bexar county a case against defendant in error for damages on behalf of his ward, Pauline Jennings, because of said injuries which were inflicted in December, 1920; that this suit was pending in said court until January 30, 1922; that while this suit was pending in the district court of Bexar county, and on the 1st day of June, 1921, there was filed before H. W. McChesney, justice of the peace for the Fourth district of St. Louis, in the state of Missouri, a suit by Mrs. Anna Mitchell, the next friend of Pauline Jennings, for damages in the sum of $50 against the defendant in error; that on the same day the suit was filed the appointment of next friend was approved by the justice of the peace, issuances of summons waived, and all parties agreed to an immediate trial; that on the same day a judgment was rendered in favor of plaintiffs and against the defendant in the sum of $50, with cost of suit and awarding execution; that on the same day the judgment was marked "satisfied," signed by the next friend, and by the minor; that the purpose of having this brought and judgment rendered in the justice court in the city of St. Louis in the state of Missouri was to avoid being compelled to try the case brought by the guardian in the district court of Bexar county; that the justice court in which the $50 damage suit was brought and in which the judgment was rendered had jurisdiction of the sum sued for, and the judgment recites that all parties appeared, announced ready for trial, and the justice of the peace heard the evidence submitted; that this judgment was based upon the same transaction upon which the suit pending in the district court of Bexar county was based, the minor being represented in the one case by a next friend, and in the other by a duly qualified guardian; that the proceedings culminating in the rendition of the judgment, in favor of the minor, for $50 against the defendant in error, were conducted by agents of the defendant in error who paid all the expenses thereof, which proceedings were without the knowledge of the guardian or of those representing him in the suit pending in the district court of Bexar county; that as soon as the minor, Pauline Jennings, became of age she repudiated the settlement evidenced by the $50 judgment above mentioned, and filed this case, the previous one filed by her guardian having been dismissed on or about January 30, 1922, this dismissal also being without the knowledge or consent of the guardian or those representing him. The record also discloses the fact to be that under the laws of the state of Missouri no direct attack upon this judgment could successfully be made by the minor or by her heirs or legal representatives, after her death, against the defendant in error, which was the defendant in that suit, except on account of fraud, and that service by publication could not be had under the statutes of the state of Missouri. It is also apparent from the record that the defendant in error, being a domestic corporation having no permit to do business in the state of Missouri, could not be forced to answer a suit to set aside the judgment for $50 rendered as aforesaid, in consequence of which, if said judgment is conclusive of the rights of the parties, the defendant in error could not be held responsible for any damages to the minor plaintiff or to her heirs or legal representatives beyond the $50, shown by the testimony to have been paid at the time the judgment was rendered, however fraudulent the judgment may be in itself, or whatever may have been the original legal rights of the minor plaintiff to recover a larger sum of damages than the testimony shows was paid her for the injuries inflicted.

It is the contention of the defendant in error, a domestic corporation having the authority to do business alone in the state of Texas, that under the facts related the judgment against it in favor of the minor for $50 rendered in the justice court in the city of St. Louis in the state of Missouri, constitutes a conclusive bar to the demand asserted by Pauline Jennings in this suit, since it is now the settled rule of law that judgments rendered by courts of sister states are entitled to the same recognition accorded the judgments of domestic courts. 34 C. J. 1125, 1126; Norwood v. Cobb, 24 Tex. 551; Hall v. Mackey, 78 Tex. 248, 14 S. W. 615.

It is a settled rule in Texas that a judgment of a court of competent jurisdiction cannot be collaterally impeached unless the record affirmatively shows the want of jurisdiction. Williams v. Haynes, 77 Tex. 283, 13 S. W. 1029, 19 Am. St. Rep. 752; Holmes v. Buckner, 67 Tex. 107, 2 S. W. 452. A litigant in questioning the jurisdiction of the court in which judgment has been rendered, to which he is a party, can only successfully do so by showing that the proceedings and the judgment resulting from the proceedings are void, and therefore the supposed record is not in truth a record. If a court has jurisdiction of the person of the defendant, and of the subject-matter of the suit, its judgment imports absolute verity and precludes further examination; but if the court has no such jurisdiction, the proceedings will nullify the character of a record and it will not be entitled to faith and credit as such. The question of jurisdiction becomes an issue which is open to examination and determination. If a court acquires jurisdiction of the subject-matter and of the person of the defendant and renders judgment, it cannot be set aside under the rule in Texas, except by a suit having for its purpose a

direct impeachment of the judgment filed in the court in which the judgment sought to be impeached has been rendered. However, it appears that the rule is somewhat different in the state of Missouri, since the law there requires such a suit to be filed only in one of the circuit courts of that state rather than in the justice court, as, for instance, in this case.

■■■ Section 1165, R. S. of the State of Missouri, reads as follows: "Suits by infants may be commenced and prosecuted, either: First, by the guardian or curator of such infant; or, second, by a next friend *appointed* by him in such suit." Section 2758 of said statutes, in part, reads as follows: "No suit shall be instituted by an infant plaintiff until a next friend of such infant shall have been *appointed*. [Italics ours.] Whenever requested, the justice shall appoint some suitable person, who will consent thereto in writing to be named by such plaintiff, to act as his next friend in such suit." These articles were agreed to be in force at the time the aforesaid judgment was rendered. We also find an agreement that the justice of the peace, who rendered the judgment, had jurisdiction of the amount recovered in the judgment. The law of Texas on this particular subject is substantially the same as section 1165 of the state of Missouri quoted, being article 1994, and reads as follows: "Minors, lunatics, idiots, or non compos mentis who have no legal guardian may sue and be represented by 'next friend.'" It will be noted that under section 1165 the guardian or curator has the preference right to commence and prosecute suits in behalf of infants, while section 2758 prohibits the institution by an infant plaintiff of any suit until a next friend shall have been *appointed*, and it further appears that from said article that before the institution of any such suit there must be a request presented to the justice to appoint a suitable person to act as next friend, and that this person, in order to be so authorized to act, must consent thereto in writing. In the absence of proof to the contrary, the courts of Texas will place a construction upon statutes of another state in harmony with the construction which has been placed upon similar statutes of this state. In Texas it is provided by statute (article 4164) that the guardian of the estate is entitled to bring and defend suits in behalf of the infant, except, and unless, it shall appear to the court that the guardian has been negligent in the particular matter, or has refused to act, or when the interest of the guardian is antagonistic to that of his ward. The law of the state of Missouri requires as a prerequisite to giving the court jurisdiction of the person of the minor, where the minor is not represented by a guardian or curator, that the court shall *appoint* some suitable person to act as next friend in commencing and prosecuting the

suit, and even then the person *appointed* is not authorized to act in commencing the suit until such person shall have consented to do so in writing. Until the provisions of sections 1165 and 2758, in the particulars above mentioned, shall appear from the record, to have been followed, it is our opinion that the court did not acquire jurisdiction of the person of the minor, who is in fact the real plaintiff in such a proceeding, by reason of the failure to comply with these plain provisions of the law of the state of Missouri. The record affirmatively shows that these provisions were not followed. It merely shows that the justice of the peace, after the cause of action had been filed but on the same day, *approved* the appointment of Anna Mitchell, who assumed to act in commencing the suit as a next friend to the minor, Pauline Jennings. Clearly, the justice court did not acquire the jurisdiction of the minor at the time the justice of the peace assumed to *approve* the appointment of Anna Mitchell as next friend, since at the time this was done there did not exist in Anna Mitchell any right to commence the suit. Evidently the statutes of Texas, giving to the guardian the right and placing upon him the duty to commence suits in behalf of a minor, is not so restrictive as to deprive the guardian of this right and to relieve him of this duty where the minor's interest demands the commencing of a suit in a court of competent jurisdiction in a sister state. This is especially true in view of the provision of section 1165 of the law of Missouri that the same privilege to commence a suit is given the guardian or curator, where one exists, as is given by the law of Texas, under the construction given this law by the courts of Texas. "Jurisdiction" is the right and power of a court to determine a controversy between individuals, and as we have seen the court of the Fourth district of the city of St. Louis of the state of Missouri did not have jurisdiction over the person of the minor, Pauline Jennings, at the time the judgment pleaded in bar was rendered, and its rendition was subject to collateral attack. That this is the correct construction of section 1165 is shown by the provisions of sections 1166 and 1167 providing that the *appointment* of a next friend for an infant must be made by the court in which the suit is intended to be brought, and that such *appointment* shall be made on the petition in writing of the infant, if of the age of 14 years, and the written consent of the person proposed to be the next friend acknowledged or proved to the court making the appointment. As we have seen, none of these provisions were complied with, and being jurisdictional in their nature, they were essential.

■ However, it further conclusively appears, from the record, that at the time the proceedings were had in the justice court

in the city of St. Louis in the state of Missouri, when the judgment was rendered, there was pending in one of the district courts of Bexar county a suit by the legally qualified and acting guardian of the estate of the minor against the defendant in error for the identical cause of action, which was the basis of the suit filed in the justice court in the city of St. Louis in the state of Missouri. It has been seen that judgments rendered by courts of sister states are entitled to the same recognition accorded to the judgments of domestic courts, and that they are entitled to the same faith and credit in every state as in the state where rendered, so that they are, or are not, valid and conclusive in other states, according as they are, or are not, in the state of their rendition. 34 C. J. 1127. It is evident that had these proceedings, which were in fact conducted in the justice court in the city of St. Louis in the state of Missouri between these parties, been had in one of the justice courts of the county of Bexar, while one of the district courts of the same county had pending upon its docket a suit based upon the same transaction between the same parties, making the same demand, under the decisions of this state, even though the laws of Missouri should be applied, the judgment rendered in the justice court of Bexar county would be an absolute nullity. In the case of Cleveland v. Ward, 116 Tex. 1, 285 S. W. 1063, 1069, in an opinion rendered by Chief Justice Cureton, speaking for the Supreme Court of this state, wherein the facts showed that the first suit of two suits was filed in the district court of Johnson county, before a similar suit had been filed in one of the district courts of Dallas county, and the question involved was whether the district court of Dallas county ousted jurisdiction of the district court of Johnson county, it is said: "When suit was filed in the Johnson county district court, the jurisdiction of that court attached, with power on the part of the court to permit the pleadings to be amended and amplified, new parties to be made, to determine all essential questions, and to do any and all things with reference thereto authorized by the Constitution and statutes, or permitted district courts under established principles of law. * * * Since jurisdiction attached upon filing the suit in Johnson county, the rule is elementary that it could not be taken away or arrested by the subsequent proceedings in another court. * * * Since the Johnson county court is a court of competent jurisdiction, and first acquired jurisdiction of this controversy, has all the necessary parties before it, and is entitled to proceed to judgment, and since it is evident that all questions necessarily or properly involved will be settled in that case, and that its judgment will be res adjudicata as against any judgment the Dallas county court might render, it follows that the Dallas county case is abated by the Johnson county suit. * * * The reason of the abatement of the subsequent suit by the first, where the latter is filed in a court of competent jurisdiction, and that jurisdiction has attached, is that, when the suit is brought, it is thereby segregated as it were from the general class to which it belonged, and withdrawn from the authority and jurisdiction of all other courts of co-ordinate power. * * * 'It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and, whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For, if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other.' * * * It is a familiar principle that, when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate authority is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws; and while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such considerations exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process. If interference may come from one side, it may from the other also, and what is begun may be reciprocated indefinitely." And quoting from Sullivan v. Reynolds, 209 Mo. 161, 107 S. W. 487, 15 L. R. A. (N. S.) 963, 123 Am. St. Rep. 468, 14 Ann. Cas. 198, Chief Justice Cureton says: "As each cause of action arises, and when suit is brought thereon in a court of competent jurisdiction, it is thereby segregated, as it were, from the general class to which it belonged, and is thereby withdrawn from the authority and jurisdiction of all other courts of co-ordinate jurisdiction." The opinion in Cleveland v. Ward, supra, has been followed in Barrier v. Lowery (Tex. Com. App.) 11 S.W.(2d) 298, and in Conn v. Campbell (Tex. Com. App.) 24 S.W.(2d) 813.

▮▮ It may be that the present plaintiff in error, as sister of the minor, has been guilty of such conduct as will preclude her by estoppel from asserting any rights against the plaintiff in error, but that is a question of fact to be determined by the jury. If in

fact she was acting in good faith in behalf of her minor sister, and yet was overreached by the fraudulent representations of the agents of the defendant in error, and was induced to act on behalf of her sister, by reason of her good faith in accepting as true these representations, whereas they were false, she would not be estopped from asserting as the heir of her sister the cause of action which her sister, during her lifetime, had against the defendant in error. It may become material upon another trial of the case to submit to the jury such issues, the answers to which as will enable the court to determine whether the present plaintiff in error has been guilty of such conduct as would in law estop her, but until the jury has passed upon these pertinent issues, no judgment on that subject could be rendered by the court. If she acted in good faith and was misled to the detriment of the rights of her sister, we see no reason why she should not be permitted to assert in this suit the same rights to recover the same judgment as her sister could have recovered, had she continued to be plaintiff in the case.

We recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and the cause remanded.

CURETON, C. J.

Judgments of the Court of Civil Appeals and district court are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.