# MRS. MAY CONNALLY ET AL. V. CONTINENTAL SOUTHLAND SAVINGS & LOAN ASSOCIATION.

No. 6107.   Decided June 9, 1932.
(51 S. W., 2d Series, 293.)

Louis J. Hexter, W. Gregory Hatcher, Wm. Andress, Jr., and Renfro, Ledbetter & McCombs, all of Dallas, for appellants.

The proposed plan of liquidation whereby all assets of the Association are to be transferred to the Guaranty Building and Loan Company and the Mortgage Liquidating Corporation in exchange for stock to be issued by said corporations directly to certain shareholders of the defendant Association without payment of any consideration to the Association for distribution to all shareholders ratably is not authorized by Article 881a-55 of the Building and Loan Law and is illegal. Fidelity Building & Loan Association v. Thompson, 25 S. W. (2d) 247.

Any power which the Act may grant to the Commissioner to adjudicate controversies between Associations and members thereof is not exclusive and does not close the courts to shareholders whose rights are being destroyed.

It is a well recognized principle of statutory interpretation that if a given construction was intended, it would have been easy for the legislative body to have expressed it in apt terms. United States v. First National Bank, 234 U. S., 245; 58 Law Ed., 1298.

A shareholder of a solvent building and loan association who has given proper notices of withdrawal of his shares which are free and clear of all encumbrances and next in line for payment, may sue the Association for the withdrawal value of his shares when the Association has idle funds on hand available for payment thereof, but refuses to pay same; and if the Association is in the process of making an illegal transfer of said idle funds and its other assets from which it receives an income subject to payment of withdrawal demands, said mem-

ber may enjoin such illegal transfer. Thompson on Corporations, 3rd ed., secs. 4512 and 5679; Texas Jurisprudence, vol. 10, p. 791.

In a suit against a corporation by a majority stockholder to enjoin an act in fraud of his rights, it is not necessary to join as parties defendant, the majority stockholders at whose instance the proposed action is to be taken.

The rule laid down in 10 Texas Jurisprudence at page 795, follows the opinion in Southwest Portland Cement Co. v. Latta & Harper, 193 S. W., 1115, stating: "Where some stockholders complain of a transaction by the officers in the name of the corporation, the corporation itself must be joined in the action as a defendant, but it is not necessary that any stockholders who have approved of the transaction should on that account be made defendants." Rippstein v. Haynes Medina Valley Railway Co., 85 S. W., 314; Anderson v. Stockdale, 62 Texas, 54; United States Mortgage Trust Company v. M.-K.-T. Ry. Co. of Texas, 269 Federal, 497 (writ of certiorari denied by the Supreme Court); Subers v. Continental Securities Company, 111 Atl., 433; Lee v. Young, 132 N. W., 595; Vassar College v. Loose-Wiles Biscuit Company, 197 Federal, 982.

A member of a solvent building and loan association which has ample funds on hand for the payment of withdrawal demands may sue the Association when it fails to pay the amount of his withdrawal if he has given the proper notices of withdrawal, required by the by-laws, his shares are free and clear of encumbrances, and he is next in line for payment out of the funds available for payment of withdrawals. 4 Ruling Case Law, p. 355 (B. & L. Assn., sec. 14); also Engelhardt v. Fifth Ward P. D. S. & L. Assn., 148 N. Y., 281, 35 L. R. A., 289, and Hoyt v. Harbor & Suburban B. & S. Assn., 197 N. Y., 113, 49 L. R. A. (N. S.), 1129, and annotations thereunder.

Articles 881a-13 to 881a-16 Revised Civil Statutes are relied upon as evidence that the Building and Loan Law gives the Banking Commissioner exclusive authority to adjudicate a controversy of this character. Appellants contend that no such implication is contained in said articles.

*W. H. Flippen* and *Geo. T. Burgess,* both of Dallas, for appellees.

The Building and Loan Act of 1929 is constitutional and does not impair any vested rights of appellants, as said Act was passed under the constitutional provision of Article 1, Section 17 of the Constitution and the powers reserved by

Article 1318 of the Revised Statutes of 1925. Phoenix v. Shearman, 43 S. W., 930; Prudential v. Shaw, 26 S. W. (2d) 168; Key v. Jones, 191 S. W., 736.

On the question of the necessary parties not being before the court: Cullem v. Latimer, 4 Texas, 329; Denison v. League, 16 Texas, 409; Pendleton v. Ferguson, 99 Texas, 296; Yotk v. Allen, 25 S. W. (2d) 193; Shields v. Barrow, 58 U. S., 130; Watkins Land Co. v. Clements, 98 Texas, 578.

On proposition that one must exhaust his remedy before applying to the courts: Johnson v. City of Dallas, 291 S. W., 972.

*Thomas B. Love,* of Dallas, and *Maco Stewart,* of Galveston, as amicus curiae.

MR. JUDGE CRITZ delivered the opinion of Commission of Appeals, Section A.

The certificate makes a very clear and comprehensive statement of the facts and issues of this case. We therefore here reproduce it in full. It is as follows:

### "QUESTIONS CERTIFIED TO SUPREME COURT.

"Appellant Mrs. May Connally, instituted this suit in a district court of Dallas County against appellee, Continental-Southland Savings & Loan Association, to recover judgment in the sum of $5,100, alleged to be the surrender value of Class C shares owned by her in the appellee association. Nine other persons, appellants and Class C shareholders in appellee association, separately intervened as plaintiffs in the suit and sought to recover the surrender value of their respective shares. In addition to this primary relief, each appellant sought the issuance of a temporary writ of injunction to restrain appellee association from consummating an alleged illegal transfer of appellee's assets, until their respective obligations should be paid. The trial court sustained both a plea in abatement and a general demurrer to the petition of each of the appellants and on each declining to amend, a final judgment of dismissal was entered in the case. An appeal was duly prosecuted by the plaintiff and each intervener to this court, and a judgment reversing and remanding the judgment of the lower court, with instructions, was entered in his court. Appellee's motion for rehearing is now pending in this court. It is deemed advisable to certify to the Supreme Court certain of the questions involved in the motion for rehearing.

## "STATEMENT.

"The pleadings of the plaintiff and interveners are substantially the same in subject matter and show that appellee is a building and loan association, chartered and operating under the building and loan laws of this State, and was a solvent and active building and loan association with the sum of $70,000 in its treasury, one-half of which was subject to the immediate use for discharge of the alleged obligations to each appellant, and that the total claims of appellants are less than said sum; that each appellant had theretofore given the written notice required by appellee's by-laws and by the building and loan laws of this State, to mature their respective claims and make them immediately payable; that in addition to the $70,000 in appellee's treasury, subject to payment of such claims, appellee has a large monthly income from various sources, each of which is specifically shown by allegations in each petition; that the payment of the amount claimed by each appellant would not impair the capital of appellee; that appellee and its officers have failed and refused to pay appellants and now propose to dispose of all the assets of the association, and to liquidate the association by an illegal plan or scheme, which, if permitted to be consummated, would defeat appellant's rights for the immediate payment of their matured claims. It is not alleged in any pleading that any of the appellants appealed to the State Banking Commissioner to secure the relief sought in this suit.

"The petitions further show, that on September 15, 1931, prior to the institution of this suit, in an attempt to consummate the illegal plan or scheme of liquidation, appellee, through its president, who was duly authorized by its board of directors to do so, sent an officially signed letter to all members of appellee association, accompanied by a proposal of Maco Stewart to purchase appellee's assets, and to deal with appellee's shareholders in the manner and on the terms stated in such proposal, and called for a vote by each shareholder as to whether he favored accepting the Stewart proposal or not. The proposal is set out in the pleadings of appellants and is as follows:

" 'A PROPOSAL FROM MACO STEWART TO SHAREHOLDERS OF CONTINENTAL SOUTHLAND SAVINGS AND LOAN ASSN. DALLAS, TEXAS, SEPTEMBER 12th, A. D. 1931.

" 'When substantially all of your shareholders whose stock is pledged to secure real estate loans and two-thirds in number

and amount of your other shareholders sign and return duplicate of this letter authorizing liquidation of the Continental-Southland Savings & Loan Association (and such liquidation approved by the Banking Commissioner as required by law) and the sale to me of all assets for $4,231,195.31, I will purchase all stock on Continental Southland Savings & Loan Association on the following terms:

" 'The auditors, Hutchinson, Smith, Prince and Harris, have divided your assets into two classes, A and B (as per their enclosed statement) placing into Class A your properly secured and current real estate loans plus sufficient amount of lawful stock loans, and note of liquidating company to bring the total assets to $5,090,243.91 (being 75% of total outstanding stock other than permanent stock and stock pledged to secure real estate loans), and placing into Class B your remaining assets subject to your liabilities.  The note of the liquidating corporation to be payable on or before five years and bearing interest at the rate of six per cent (6%) payable monthly with right to pay thereon at any time any sum desired and same to be secured by lien on all assets of liquidating corporation.

" 'I will pay for the assets in Class A, stock in Guaranty Building & Loan Co., amounting to $5,090,243.91 to be evidenced by Certificates (in form printed on back hereof) and same to be exchanged and distributed ratably to your shareholders (other than permanent shares and shares pledged on real estate loans) in proportion to their credits shown on the books of the Continental Southland Savings and Loan Association.

" 'I will pay for the remaining assets in Class B, stock in the Mortgage Liquidating Corporation to be formed by me and operated solely for the purpose of liquidating your Class B assets, subject to your liabilities.  The stock in such liquidating corporation will be non-par stock in usual form.  There shall be seven directors of whom four shall be named by Continental Southland's present directors, and three by Stewart and any action by Board to receive two-thirds vote of Board.

" 'The foregoing assures your shareholders receiving the full benefit of all assets of the Continental Southland Savings and Loan Association.

" 'On the basis of your Class A assets being fixed as above stated each Continental Southland shareholder (other than permanent shareholders and shareholders whose shares are pledged to secure real estate loans) will receive stock in Guaranty Building and Loan Co. to the extent of seventy-five per cent

of the amount now credited on the books to his stock, and for the remainder will receive his pro-rata of stock in the liquidating corporation. As an illustration—One who has credit on the Continental Southland books of say $1,000.00 will receive 7½ shares of stock in Guaranty Building & Loan Co., of the face and par value of $750.00 and will also receive 250 shares in the Liquidating Corporation, all of which will be preferred over the shares to be issued as Common stock to your permanent shareholders.

" 'The certificate in stock of Guaranty Building & Loan Co. provides for dividends quarterly and expressly restricts filing of application for withdrawal to one-fifth of the amount per year.

" 'The assets of the Liquidating Corporation will consist principally of real estate and delinquent notes and be liquidated in an orderly manner and as fast as can be done without sacrifice. Guaranty Building & Loan Co. will furnish, without charge, all clerical services in the home office necessary in such liquidation, and no charge will be made for my services to the Liquidating Corporation.

" 'When the proposed plan meets the required approval, each shareholder in Continental Southland will be promptly notified to send in stock to the First National Bank in Dallas, which will act as transfer agent for the stock.

" 'The assets so transferred to me will be simultaneously by me transferred, the Class A assets to the Guaranty Building & Loan Co. and the Class B assets to the liquidating Corporation.

" 'Each borrower will receive credit on his loan for the amount paid in as stock dues and dividends as credited to his account by the books of the Association and such borrower shall execute extension note payable to Stewart or assigns for the balance as shown by such books at the same rate of interest provided in note now held by the association and principal and interest repayable in installments of not less than $12.50 per month per thousand.

" 'Time is of the essence of the contract and the required approval must be had by October 15, 1931, and the deal will then be promptly closed.

"Respectfully,
"Maco Stewart.

" 'I, subscriber, shareholder in Continental-Southland Savings & Loan Association, approve the plan hereinbefore outlined, and hereby appoint any officer of said Association to

accept notice of any meeting called to consider any of the matters necessary to consummate such transaction, and attend and vote as my proxy at all called and adjourned meetings for the carrying into effect of the liquidation of the association and take all steps necessary to that end and to carry in effect the proposal made by Maco Stewart in the above and foregoing letter.

Signed _____

Address _____

"SIGN AND MAIL THIS TO MACO STEWART, PRESIDENT GUARANTY BLDG. & LOAN CO., DALLAS, TEXAS, IN ENCLOSED STAMPED ENVELOPE.

"Form of Certificate to be Issued

"Guaranty Building & Loan Company
C-S Certificate
Par Value $100 per share

"Received from _____ _____

_____ Dollars
in payment for stock in Guaranty Building & Loan Co., styled Class C-S, 20% of which sum may be withdrawn on presentation of this Certificate as provided in its by-laws, a copy of which is this day furnished the holder hereof which by-laws are part hereof, and upon holder filing written application for such withdrawal of 20% at any dividend date after issuance hereof and annually thereafter for like amount.

" 'Dividends out of earnings at rate of 6% per annum on said sum payable on first days of January, April, July and October on presentation of this certificate and which earnings are to begin and be computed from October 2, 1931.

DALLAS, TEXAS                    Date
Attest:                    Guaranty Building & Loan Co.
                          By_____
_____
Cashier                                        President.' "

"It is further shown by the pleadings of appellants that a large number of appellee's shareholders have executed proxies for carrying out the purposes stated in the proposal, and that the required number of two-thirds of the investment shareholders, and substantially all of the borrowing shareholders, have voted and will vote in favor of the Stewart proposal, and that the scheme of liquidation contained therein will be consummated by appellee, and all of its assets will be transferred in accordance with the proposal, and appellants' rights to im-

mediate payment of their respective claims now existing, will be destroyed and there would remain to them only the rights given in the proposal; that this manner of liquidating a building and loan association is illegal, in that it is not authorized or contemplated by the building and loan laws, and that appellants are not willing to surrender their claims against the assets and income of the association and accept the plan proposed, and to prevent what is alleged to be an illegal transfer of the assets, a temporary writ of injunction was prayed for.

"Appellee presented a plea in abatement and an answer, consisting of a general demurrer and a number of special exceptions. The plea in abatement, which was in the nature of special exceptions to the petitions with the force of a general demurrer, and the general demurrer, were sustained by the trial court, no evidence being heard on the plea. A copy of the opinion of this court accompanies this certificate, which shows the holding of this court, the reason on which such holding is based, and the disposition of the appeal by this court.

"Appellee's motion for rehearing raises specifically all of the questions herein certified to the Honorable Supreme Court.

## "QUESTIONS

"Question No. 1: Assuming appellee to be a solvent and active building and loan association, can appellants maintain this suit under the existing building and loan statutes of this State, to enforce payment of the surrender value of their matured shares in appellee association, without first having appealed to the State Banking Commissioner for such relief?

"Question No. 2: Is the liquidation of appellee association, as proposed by the Stewart plan, authorized either by section 54 of Article 881a Revised Statutes, or by section 55 of said Article, and hence can be enforced over the objection of less than one-third of the total number of investment shareholders?

"Question No. 3: If question No. 2 be answered in the negative, then would the approval of the State Banking Commissioner to such a plan of liquidation and disposition of the assets and engagements of appellee, render the transactions had thereunder, binding on such minority investment shareholders?

"Question No. 4: If questions Nos. 2 and 3 be answered in the negative, and assuming that the solvency of appellee exists, would appellants, as minority objecting investment shareholders, have the right in this suit to enjoin the carrying

out of the Stewart proposal until their claims had been satisfied?

"The briefs of the parties and the record filed in this court accompany this certificate."

### OPINION.

█ We shall first dispose of the issues involved and questions certified by a general discussion thereof in conjunction with pertinent statutes involved, and then directly answer the questions certified. The "Stewart Proposal" is set out in full in the certificate. The statutes directly involved in determining the validity of such proposal are sections 54 and 55 of Article 881a, 1931 Pocket Supplement, Vernons 1925 Civil Statutes. These sections read as follows:

54. "Consolidation. At the annual meeting or at any meeting called for that purpose, any two or more building.and loan associations organized under the laws of this state may, by vote of two-thirds of all shareholders of each of the different associations, resolve to consolidate into one association upon such terms as shall be mutually agreed upon by the directors of such associations; or any such association may transfer its engagements, funds and property to any other such association upon such terms as may be agreed upon by its board of directors, when approved by two-thirds of all the shares of all members convened in special meeting for that purpose, the notice sent to each member of record specifically stating the object of the meeting; if such notice shall state affirmatively the terms upon which such consolidation is contemplated and shall state that any member not present at the meeting in person or by representative will be regarded as having voted for the transfer or consolidation, such absent member shall be counted as being among the required two-thirds affirmative vote; but such transfer shall not prejudice the right of any creditor of any such association to have payment of his debt out of the assets and property thereof, nor shall any creditor be thereby deprived of or prejudiced in any right of action then existing against the officers or directors of said association for any neglect or misconduct; providing that the reorganized association shall be liable for all obligations to stockholders of the associations existing prior to such consolidation, and providing, further, that no consolidation or transfer provided herein shall take effect until the terms and conditions have been approved by the Banking Commissioner of Texas, and until a copy of the resolution, certified by a ma-

jority of the board of directors of each association, shall be filed with said Banking Commissioner of Texas, and recorded in the same manner hereinbefore provided for amendments to charters. (Acts 1929, 41st Leg., 2d C. S., p. 100, ch. 61, par. 55)."

55. "Voluntary Liquidation. At the annual meeting or at any meeting called for that purpose, any Building and Loan Association of this State may, by a vote of shareholders owning two-thirds of the voting shares in force, resolve to liquidate and dissolve the corporation; providing, that before such resolutions shall take effect, a copy thereof, certified to by the president and the secretary of such Association, together with an itemized statement of its assets and liabilities, sworn to by a majority of its Board of Directors shall be filed with the Banking Commissioner of Texas. When the Banking Commissioner of Texas has approved such resolution it shall thereafter be unlawful for such Association to issue stock or make any loans, but all its income and receipts in excess of actual expense of management shall be applied to the discharge of its liabilities; and the officers of the Association, under the direction of its Board of Directors and under the supervision of the Banking Commissioner shall thereupon proceed to liquidate the affairs of the Association and reduce the assets thereof to cash and distribute the same among the shareholders in proportion to the withdrawal value of the holdings of each shareholder at the time of the passage of the resolution to dissolve.

"Provided, however, that the plan of the liquidation, including contemplated expenses and the sale of any or all of its assets shall have the approval of the Banking Commissioner or his authorized representative before any expenses are incurred or any sale or sales are made, and any and all expenses incurred by the Banking Commissioner or his duly authorized representatives shall be paid from the assets of the Association. (Acts 1929, 41st Leg., 2nd C. S., p. 100, ch. 61, par. 56, as amended Acts 1931, 42nd Leg., p. 331, ch. 198, par. 1)."

We shall now proceed to construe the above mentioned statutes as bearing on the question as to whether the instant proposal is authorized or contemplated by either or both.

An examination of section 54, supra, discloses that it has reference alone to the consolidation of two or more associations into one association, or the transfer of the engagements, funds and property of one association to another association. This section then in detail provides the way and manner in

which such a consolidation or transfer may be consummated or accomplished and the rights of the stockholders or members and creditors after the consolidation or transfer preserved and protected; it being provided in effect that the rights of creditors shall not be prejudiced, and that the reorganized association shall be liable for all obligations to stockholders existing prior to such consolidation. Finally this section makes the approval of the Banking Commissioner a condition precedent to the consummation of the plan in either manner.

An examination of section 55, supra, discloses that it has reference alone to the voluntary dissolution and liquidation of a building and loan association by a two-thirds vote of the shareholders. This section in detail provides the way and manner in which such voluntary dissolution and liquidation can be had, and particularly provides that in such instances the association shall cease to issue stock or make loans, and that the net income and receipts shall be applied to the discharge of its liabilities. It is then provided that the assets shall be reduced to cash and distributed among the shareholders in proportion to the withdrawal value of such shares at the time of the passage of the resolution to dissolve. This section also requires the approval of the resolution to dissolve by the State Banking Commissioner.

When we come to consider whether the instant proposal comes within the provisions of section 54, supra, we find that it is entirely foreign thereto. It is neither the consolidation of two or more associations, nor the transfer of the engagement funds and property of one association to another association.

When we come to consider whether the instant proposal comes within the provision of section 55, supra, we find that it is not the liquidation of an association, and is not a reduction of its assets to cash as contemplated by that section.

When we come to further consider the validity of the instant proposal in the light of both sections 54 and 55, we find that such proposal violates both sections in that it discriminates between borrowing and non-borrowing shareholders.

We understand counsel for appellee to contend that the proposal amounts in law to a cash offer to the association for the purchase of its assets. In this connection we understand that counsel for appellee further contend that such offer means that Mr. Stewart will pay $4,231,195.13 in cash for the assets of the association and that the association can then pay such of its

shareholders who do not care to trade with Mr. Stewart, the proportionate amount coming to each of them on their stock, which will amount to about sixty cents on the dollar of the par withdrawal value of such shares. We think the proposal is susceptible of no such construction. It begins with the word "When," which word when read in the light of the entire document means "If." The offer is then conditioned on the acceptance of all of its terms. The general effect of these terms is that Mr. Stewart becomes the owner of all the assets of the association, and the obligations thereof are discharged by a plan by which, as we understand the contract, the borrowing shareholders will be paid in full while the non-borrowing shareholders will suffer a loss. This is clearly a discrimination and in violation of law.

A study of the entire act, of which the two above quoted sections are but a part, discloses that the two sections are exclusive within their scope, and they provide the only way and manner in which the things therein provided for can be attained without the consent of all shareholders. It follows that the instant plan is without authority of, and contrary to law.

■ The Building and Loan Act, taken as a whole, imposes on the Banking Commissioner the power and duty to enforce and execute the laws of this State regulating the formation, conduct, transfer, consolidation, dissolution and liquidation of Building and Loan Associations, and the powers and duties provided by our Building and Loan Act in many instances call for the exercise of sound judgment and discretion on the part of the Banking Commissioner, but such sound judgment and discretion must be exercised within the limits of the powers expressly given or necessarily inferred from the powers given, and the Commissioner cannot go outside the powers given, or necessarily inferred therefrom and approve contracts not only not contemplated by law, but expressly prohibited thereby.

■ Under the above quoted statutes, if the Commissioner should approve the instant proposal, his act in doing so would not only be illegal in the sense that it is not provided by law, or necesarily implied therefrom, but in the further sense that it is prohibited by law. Such being the case, we must conclude that the statute itself does not contemplate that his action on such a proposal must be had as a condition precedent to a resort to the courts to prevent its consummation. We should not construe a statute so as to require a useless and idle thing when it is susceptible of another construction.

578

■ In connection with the above we wish to say that we recognize the rule to the effect that where a law empowers or requires a public official to exercise sound judment and discretion in certain instances, such judment and discretion is not subject to judicial review when lawfully exercised without fraud or abuse; but we think the instant statutes contemplate that the things required to be approved by the Banking Commissioner should be such as are allowed by law,—at least they should not be contrary to law.

■ The Association contends that this suit should be abated because of a non-joinder of certain other shareholders in a like position with plaintiff and interveners. We think this contention should be overruled. This is not primarily an injunction suit but an action for the recovery of liquidated money demands. Mrs. Connally sues for $5,100, alleged to be due her by virtue of the fact that she is the owner and holder of shares of stock in the association of the par value of that amount, which were fully paid for when purchased by her. The several interveners are in the same legal position. They own severally certain fully paid out and matured shares in the association. It is alleged by the plaintiff and interveners that the association is a solvent and going concern with sufficient idle cash on hand in its treasury to pay all claims for matured stock here sued on in the order of maturity. According to their pleadings the plaintiff and interveners have each complied with all statutory and by-law requirements necessary to entitle them to receive payment of their several claims. The prayers are each for judgment for the respective sums sued for, and the injunction sought is only incidental to prevent the consummation of the deal and the alleged dissipation of the assets pending the litigation and until plaintiff's and interveners' demands are paid. Certainly under such a record it is not necessary to make the individual shareholders parties defendant. Section 2 of Article 4642, Revised Civil Statutes, 1925.

Much is said in appellee's brief about the association being insolvent, and about the rights of shareholders in an insolvent association. All this is beside the question. The plaintiff and interveners allege the association to be solvent. The trial court sustained the plea in abatement and the general demurrer both urged by the appellee, and plaintiff and interveners having declined to amend, dismissed the cause. No trial was ever had on the issue of the insolvency, or any other issues made by the plaintiff and interveners. In fact as we understand

this record no evidence of any kind was heard by the trial court. This being true we must accept the allegations contained in the several petitions as true for the purpose of testing their sufficiency.

■ We think it is the general rule that where an association is solvent, and a member with matured shares has complied with all of the conditions prescribed by the constitution and by-laws of the association he may then bring a suit for a money demand if the association refuses to recognize his rights of withdrawal. 4 R. C. L., pp. 355-6, par. 14. Such is the action here.

■ It seems to be contended that sections 13, 14, 15 and 16 of the 1929 Building and Loan Act, being also the same numbered sections of Article 881a, Vernons 1931 Pocket Supplemental to Vernons R. C. S., 1925, require that the claims here sued on be first submitted to the Banking Commissioner and his action thereon first invoked before the courts of the land can be resorted to. We think these statutes have no reference whatever to the matters here involved. A simple civil suit against a building and loan association on a money demand is not a *liquidation* within the meaning of such statutes.

■ It is also the general rule that the right of shareholders to withdraw and receive the amount of his matured shares exists only where the association is a solvent going concern and such cannot exist or be exercised where the association is at the time insolvent, for the condition of insolvency is inconsistent with the right of any member to withdraw his contribution from the general fund. 4 R. C. L., p. 356, par. 15.

It follows from what we have said that we hold that if the association is insolvent, the plaintiff and interveners are entitled to no relief in this action in its present form. In this connection we again call attention to the fact that this action is primarily a suit for a money demand and the injunction sought is purely incidental or ancillary to the primary cause. If the primary cause fails the incidental or ancillary relief must also fail.

We recommend that "Question No. 1" be answered "Yes"; that "Question No. 2" be answered, "No"; that "Question No. 3" be answered "No"; and that "Question No. 4" be answered "Yes."

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.