Carolyn G. CROSLAND, Appellant,

v.

**TEXAS EMPLOYMENT COMMISSION and ITT Aetna Corporation, Appellees.**

No. 19122.

Court of Civil Appeals of Texas, Dallas.

March 30, 1977.

Rehearing Denied April 28, 1977.

Randall Grubbs, Garland, for appellant.

John L. Hill, Atty. Gen., Michael E. Stork, Asst. Atty. Gen., Austin, for appellees.

GUITTARD, Chief Justice.

This suit for unemployment compensation was filed by appellant Carolyn G. Crosland nine days after the Texas Employment Commission mailed to her its decision overruling her motion for rehearing of its decision denying her claim. The trial court dismissed the action for lack of jurisdiction on the ground that the filing was premature under Tex.Rev.Civ.Stat.Ann. art. 5221b–4(h) and (i) (Vernon 1971). That article reads:

> (h) Appeal to Courts: Any decision of the Commission shall become final ten (10) days after the date of mailing thereof, unless, within such ten (10) days, the appeal is reopened by Commission order or a party to the appeal files a written motion for rehearing, and judicial review of any final decision of the Commission shall be permitted only after any party claiming to be aggrieved thereby has exhausted his remedies (not including a motion for rehearing) before the Commission as provided by this Act. . . .

> (i) Court Review: Within ten (10) days after the decision of the Commission has become final, *and not before*, any party aggrieved thereby may secure a judicial review thereof by commencing an action . . . [emphasis added].

We conclude that premature filing of the action did not deprive the court of jurisdiction under the circumstances shown in this record.

■ As we interpret the statute, judicial review is permitted only after the decision of the Commission has become final, and the decision does not become final until ten days after the date of mailing. Within that ten days the Commission itself may reopen its order, or any party may file a motion for rehearing. When a motion for rehearing has been filed within the ten-day period allowed, the Commission's order overruling the motion for rehearing does not become final until ten days after mailing that order.

The difficulty arises from the provision of subdivision (i) that permits judicial review by commencing an action "[w]ithin ten (10) days after the decision of the Commission has become final, *and not before*." What is the effect of filing the petition for judicial review before the time permitted by this subdivision? The statute does not specify. It does not, by its terms, provide that the court can never obtain jurisdiction of an action prematurely filed, even if the petition is on file with the clerk within the ten days permitted for commencing the action. Therefore, we must construe the statute, and we are reluctant to construe it as a strict jurisdictional requirement that the same suit be filed again.

Crosland relies on *Texas Employment Commission v. Stewart Oil Co.*, 153 Tex. 247, 267 S.W.2d 137 (1954), which held that such a premature filing was not fatal under the statute as it stood before it was amended in 1955. In that case, the supreme court said that since the petition was in the possession of the clerk at the end of the ten days, to insist upon the subsequent filing of a duplicate set of papers and obtaining a new filing stamp would be a "retreat into formalism," and consequently, premature delivery of the petition to the clerk did not prevent it from taking effect when the Commission's ruling became final.

The *Stewart Oil* case would control here but for the 1955 amendment, which added

the words "and not before." The Commission insists that this amendment shows the intent of the legislature to change the law as declared in *Stewart Oil* and, therefore, to deny jurisdiction of an action prematurely commenced, even though the effect of this construction is to require the filing of another petition identical to the one already in the official custody of the clerk.

■ We are not convinced that the legislature intended to require this meaningless formality. A statute will not be interpreted so as to lead to a foolish or absurd result unless there is no alternative interpretation. *McKinney v. Blankenship*, 154 Tex. 632, 282 S.W.2d 691, 698 (1955); *Trimmier v. Carlton*, 116 Tex. 572, 296 S.W. 1070, 1074 (1927); *Petroleum Casualty Co. v. Williams*, 15 S.W.2d 553, 555 (Tex.Com. App.1929, jdgmt adopted). Neither will a statute be construed to require a useless or idle thing if it is susceptible to any other construction. *Connally v. Continental Southland Savings & Loan Ass'n*, 121 Tex. 565, 51 S.W.2d 293, 298 (Tex.1932); *Dovalina v. Albert*, 409 S.W.2d 616, 621 (Tex.Civ. App.—Amarillo 1966, writ ref'd n. r. e.). A construction leading to a harsh or unjust result should be avoided, even when the literal text of the statute seems to require it. *State Highway Dept. v. Gorham*, 139 Tex. 361, 162 S.W.2d 934, 936 (1942); *Anderson v. Penix*, 138 Tex. 596, 161 S.W.2d 455, 459 (1942); *Austin v. Strong*, 117 Tex. 263, 1 S.W.2d 872, 876 (1928). If adherence to the strict letter of the statute would lead to injustice of absurdity, the court's duty is to seek the true meaning of the legislation. *Magnolia Petroleum Co. v. Walker*, 125 Tex. 430, 83 S.W.2d 929, 934 (1935). These principles of construction are applied even when the question is whether the legislature has granted permission to sue the State. *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 735 (1941); *Commercial Standard Fire & Marine Co. v. Commissioner of Insurance*, 429 S.W.2d 930, 934 (Tex.Civ.App.—Austin 1968, no writ).

■ We recognize that the legislature must be presumed to have intended to change the statute by amending subdivision (i) in 1955. *American Surety Co. v. Axtell Co.*, 120 Tex. 166, 36 S.W.2d 715, 719 (1931). Accordingly, we must construe the amendment so as to give it some effect. In this connection we must determine what the legislature intended to accomplish by the amendment and whether the legislative intent can be given that effect without requiring, as a jurisdictional prerequisite, the second filing of a petition already on file. We believe that the evident legislative intent can be given effect without such a harsh and absurd result. It is reasonable to conclude that after the opinion in *Stewart Oil*, the legislature was concerned that the filing of a suit before the decision of the Commission became final might be held to pre-empt the jurisdiction of the Commission, and thus to prevent the Commission from reopening its order, and that such premature filing might also prevent other parties from invoking further administrative action by filing a motion for rehearing as authorized by subdivision (h). Whether the *Stewart Oil* decision would have had that result is beside the point. The legislature was evidently concerned that no doubt be left as to whether the jurisdiction of the Commission might be pre-empted by filing of an action in court before expiration of the full ten days after the date of mailing. Thus, it amended subdivision (i) to provide that an action may be commenced "[w]ithin ten (10) days after the decision of the Commission has become final, *and not before.*"

Effect may be given to this evident legislative intent without requiring a second action to be filed when the first is filed prematurely. Full effect can be given to that intent by holding that when a suit is prematurely filed, it can have no effect on the jurisdiction of the Commission and is a nullity until the Commission's decision becomes final. If the Commission's decision is not final, the Commission may reopen its order or any party may file a motion for rehearing, notwithstanding the premature filing of the suit. In that event the Commission will retain jurisdiction until it finally disposes of the matter. Meanwhile, the petition on file in court has no effect on the

administrative process, and the court has no power to proceed until that process is complete. When the Commission's order becomes final, however, if a proper petition is on file with the clerk, or if such a petition is filed within the ten-day period allowed by subdivision (i), the court then has jurisdiction and may proceed.

■ Moreover, subdivision (i) does not expressly provide that the petition shall not be *filed* before the Commission's decision becomes final. It provides, rather, that the aggrieved party may not *commence an action* to secure judicial review before that time. An action is not necessarily commenced when the petition is filed. In cases determining when an action has been commenced within the statutes of limitation, commencement is held to require also diligence in service of process. *Rigo Mfg. Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex.1970). Under this rule the statutory prohibition of commencing the action before the Commission's decision becomes final can be given full effect by holding, as we do, that the action is not commenced by premature filing of the petition and cannot be considered commenced until the Commission's decision becomes final. Then a petition already filed with the clerk will constitute commencement of the action within subdivision (i) if plaintiff is diligent thereafter to obtain service of process. Service before the Commission's decision becomes final would be no more effective than service before the petition is filed. Premature service might have a tendency to discourage other parties from seeking further administrative relief and, therefore, would be within the prohibition of the amended statute. Filing the petition, however, would not, in itself, be likely to have that result. In this case no question of premature service is presented because the record shows that process was not served until after the Commission's decision became final.

The rule concerning avoidance of absurdity and injustice in the construction of statutes is particularly applicable in this case because of the crucial practical problem facing counsel for Crosland when the petition was filed. He had already filed a motion for rehearing and the Commission had overruled it. Did the Commission's decision become final when the motion was overruled, or did it become final ten days after the order overruling the motion was mailed? A lawyer accustomed to the procedure for obtaining review of decisions of trial courts and courts of civil appeals under Tex.R. Civ.P. 356 and 468 might have cause for uncertainty as to whether the ten days for commencing the action began when the motion was overruled or ten days later. Counsel might have taken the safe course by filing one action, as he did, within ten days after the motion was overruled, and then filing another more than ten days after the date of mailing the order. In our view it would be unjust and absurd to expect him to file two such identical suits, particularly in such a small matter as a claim for unemployment compensation. To affirm the trial court's dismissal for want of jurisdiction, we would have to hold that by interpreting the statute as requiring the filing of the petition within ten days after mailing of the Commission's order, counsel made a fatally erroneous interpretation of the statute. It would be unjust, unreasonable, and absurd to hold that the court did not acquire jurisdiction because counsel did not file the same petition again on the next business day. Consequently, under the authorities cited, we cannot attribute to the legislature an intention to require such a result.

■ Since the record fails to show that any further administrative proceedings were undertaken that would prevent the decision of the Commission from becoming final within ten days after it was mailed, we hold that the petition in the possession of the clerk after the Commission's order became final, and before the expiration of the ten-day period allowed by subdivision (i), vested jurisdiction in the court to proceed with the action. Consequently, the court erred in dismissing the action for lack of jurisdiction.

Reversed and remanded.

ROBERTSON, Associate Justice, dissenting.

I must respectfully dissent. The statute at hand, properly construed, does not allow the filing of a petition before the decision of the Commission becomes final. I do not agree that this strict construction leads to a "harsh and absurd" result, rather, I conclude that the language of the statute is clear and unambiguous, and that the prohibition of premature filing indicates a rational legislative intent to preserve the jurisdiction of the Commission, as well as to protect the rights of other parties to the administrative proceeding.

The court's holding, as stated by the opinion of the Chief Justice, is that the words "and not before" in the statute are not jurisdictional, but rather merely reflect the legislature's intention to preclude post-filing procedures in the reviewing court. By this analysis, the court fails to recognize the legislature's clear intent to avoid such a result, and construes the statute to render the words "and not before" a useless and vestigial appendage.

This interpretation is contrary to established rules of statutory construction. Although *Texas Employment Commission v. Stewart Oil Co.,*, 153 Tex. 247, 267 S.W.2d 137 (1954) superficially supports Crosland's claim that the court had jurisdiction to entertain her premature claim, article 5221b–4(i) was amended at the next session of the legislature to insert the words "and not before." A presumption exists that the legislature is familiar with prior decisions of our supreme court and that if it is not satisfied with the law as declared by the courts, the legislature will enact statutory change to reflect a contrary intention. *Federal Crude Oil Co. v. Yount-Lee Oil Co.,* 122 Tex. 21, 52 S.W.2d 56 (1932); *State v. Anderson,* 119 Tex. 110, 26 S.W.2d 174 (1930); *State v. Duke,* 104 Tex. 355, 137 S.W. 654 (1911). Courts are obligated to give effect to statutory modification, and legislative annulment of judicial action demonstrates a clear intent to change the law. *Smith v. State,* 420 S.W.2d 204 (Tex.Civ.App.—Austin 1967) *aff'd* 434 S.W.2d 342 (Tex.1968).

Unemployment compensation is a right granted by a statute, and legislative grants of rights or privileges must be construed strictly in favor of the state on grounds of public policy. Whatever is not unequivocally granted in clear and explicit terms is withheld. *State v. Standard,* 414 S.W.2d 148, 153 (Tex.1967); *Gilbert v. State,* 437 S.W.2d 444, 446 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.). In granting the right to unemployment compensation, the State has also prescribed terms and conditions for its enforcement, and statutes creating rights of action against the State must be strictly construed. *State v. El Paso Natural Gas Co.,* 311 S.W.2d 170 (Tex.Civ.App.—Austin 1957, no writ) . In this instance, the right of appeal has been expressly limited by a mandatory provision, and these statutory proceedings are strictly governed by the statute of their creation. *Texas Employment Commission v. International Union of Electrical, Radio and Machine Workers, Local No. 782,* 163 Tex. 135, 352 S.W.2d 252, 254 (1961).

Adherence to the terms of the statute does not lead to unjust formality. This court recognizes that premature filing threatens to pre-emp jurisdiction of the Commission by potentially precluding revision of the Commission order. Moreover, such premature filing may also prejudice the rights of other parties to the administrative action by preventing the filing of motions for rehearing under subdivision (h). To rectify these problems, the legislature amended the statute to preclude judicial review before the Commission's order becomes final. Supposedly, the majority opinion does not construe this prohibition as jurisdictional; however, it goes on to say that "the petition on file in court has no effect on the administrative process, and the court has no power to proceed until that process is complete." The difference between this limitation and a lack of jurisdiction evades me. Jurisdiction is the power of a court to hear and determine the contro-

versy between the parties, *Mitchell v. San Antonio Public Service Co.*, 35 S.W.2d 140, 143 (Tex.Com.App.—1931, holding approved), and if a court has no power to proceed in the adjudication of a dispute, as the majority holds, it seems clear that it lacks jurisdiction within the accepted meaning of the term. If we were capable of reviewing the wisdom of legislature enactments, the court could perhaps conclude that the legislature may have had only post-filing activities in mind however, this would not be a proper judicial function. We may not invade the legislative field. The rule which permits departure from the literal meaning of an act does not apply when a statute clearly and unambiguously demonstrates the legislative intent, *Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99, 109 (1961), and refusal to enforce the statute in accord with that intent is an unwarranted interference with the exercise of lawful legislative authority and an inexcusable breach of judicial duty. *Love v. Wilcox, 119 Tex. 256, 28 S.W.2d 515 (1930); Grasso v. Cannon Ball Motor Freight Lines*, 125 Tex. 154, 81 S.W.2d 482, 485 (Tex.Com.App.—1935, holding adopted). The harshness of a literal construction's result is no excuse for judicial improvisation. An unambiguous statute should be applied and enforced as it reads, regardless of its policy or purpose or the justice of its effect. *Franklin v. Pietzsch*, 334 S.W.2d 214, 218 (Tex.Civ.App. —Dallas 1960, writ ref'd n. r. e.). If the legislature wished to qualify its words, it would have done so. Absent such an indication, however, we should not supply judicial provisos.

Moreover, I feel that even if the court was somehow justified to constructively qualify the statute, the new interpretation contravenes accepted authority regarding the jurisdiction of Texas courts. The court seems to conclude that the premature filing of the petition invokes some power of the court to hold the cause in abeyance until its jurisdiction is properly applicable. When the Commission's order becomes final, the action then spontaneously arises and is then properly before the court. Such a holding

fails to recognize that the first consideration of any court is to determine its own jurisdiction of a case, and if a lack of jurisdiction appears, the court should dismiss the case as a matter of law. *Hager v. State Ex Rel. TeVault*, 446 S.W.2d 43, 52 (Tex.Civ. App.—Beaumont 1969, writ ref'd n. r. e.); *Lone Star Finance Corp. v. Davis*, 77 S.W.2d 711, 714 (Tex.Civ.App.—Eastland 1934, no writ). The trial court is not authorized to hold causes in abeyance until its jurisdiction is satisfied, nor is it empowered to give later effect to an original filing which was, because of lack of jurisdiction, a nullity.

I am not convinced that forcing a party to refile to meet jurisdictional standards is either unjust or absurd. The legislature evidently was seriously concerned with preventing jurisdictional conflicts and preserving the rights of other parties. It is not unreasonable to assume that they deemed these considerations of such importance to motivate a strict qualification of the right of appeal. Such a restriction is not absurd and certainly outweighs the fiction that a trial court may retroactively exert its jurisdiction to effectuate that which was originally void. The legislature has acted in a clear and unambiguous manner, and it is not the role of this court to impose its view of the proper procedure in derogation of a manifest legislative intent.

As a personal matter, I am not entirely unsympathetic with the attitude of the majority of the court. My proposed strict construction will result in Crosland's loss of the right to appeal for lack of timely filing. Despite this hardship, the law is clear, and I cannot decide this case on some vague intuitive feeling of natural justice. I fully share the convictions of the late Justice Roberts, formerly of the Texas Supreme Court, who, in *Duncan v. Magette*, 25 Tex. 245, 253–54 (1860), said:

> Whoever undertakes to determine a case solely by his own notions of abstract justice, breaks down the barriers by which rules of justice are erected into a system, and thereby annihilates law . . . To follow the dictates of jus-

tice, when in harmony with the law, must be a pleasure; but to follow the rules of law, in their true spirit, to whatever consequences they may lead, is a duty.

For these reasons, I am unable to concur in the judgment of the court.