AUSTIN INDEPENDENT SCHOOL DISTRICT ET AL. V. S. M. N. MARRS, SUPERINTENDENT, ETC., ET AL.

No. 5911. Decided July 22, 1931.
Motion for rehearing overruled November 12, 1931.
(41 S. W., 2d Series, 9.)

*J. M. Patterson, Claude Pollard* and *Black & Graves,* all of Austin, for relators.

Chapter 49 is invalid and unenforceable in that it does not satisfy the requirements of section 35 of article III of the Constitution of the State of Texas, in that the subject of the bill is not expressed in its title. The title of the bill reads as follows:

"An Act to provide for the maintenance of county administration of the public free schools to be prorated to all of the schools of the county, and declaring an emergency."

That the title of the bill is positively misleading and is wholly inadequate and insufficient to convey to any person the information that in the body of the bill an attempt is made to authorize the County School Board, having no jurisdiction over the independent districts in the county, to levy an assessment upon the funds of such independent district in an amount

determined according to the discretion of such board for the purpose of supporting and maintaining the county superintendent's office. That the heading inserted by the secretary of state in the published and printed session acts reading as follows:

"Salary and Expenses of County Superintendent to be Paid by Common and Independent Districts," fairly and plainly describes the subject of the bill, but that the title of the bill obscures and utterly fails to disclose, if it does not postively misrepresent, the subject as disclosed by the body of the bill.

The Austin Independent School District is a municipal corporation and its school funds are special funds protected by the Constitution for the benefit of the school children of the district. The Legislature cannot lawfully require the expenditure of such funds for any purpose that is not connected with and does not benefit the Austin schools. Love v. City of Dallas, 120 Texas, 351, 40 S. W. (2d) 20.

Chapter 49 does not provide that the so-called County Administration Expense Fund shall be a charge upon, or shall be secured by a lien upon, the state apportionment money distributable to the Austin district. The state superintendent in attempting to charge those funds with a lien to secure the collection of the so-called assessment has acted without legal sanction, and has failed and refused to execute the statute in respect to which it is his plain duty to perform a purely ministerial act.

*James V. Allred,* Attorney General, *Scott Gaines,* Asst. Attorney General, *Ben H. Powell, George E. Shelley* and *Smith, Brownlee & Goldsmith,* all of Austin, for respondents.

Keeping in mind the liberal construction universally given by the courts to the titles of legislative acts, the construction that we are asking the court to place on the language used in the title to chapter 49 does no violence to the constitutional provision requiring all laws passed by the Legislature, except the general appropriation act, to express in their titles the subject matter of the acts. Section 35, article 3, Constitution of Texas.

All the schools in Travis county are state schools, without distinction between common and independent school districts. For convenience, the state gave to the counties, as trustees for the use and benefit of the state schools located in such counties, lands to constitute a permanent school fund. The revenue from this permanent fund constitutes the county available school fund which is administered by the county as the agent of the state, and as trustee for the benefit not of the county schools,

but of the state schools. In this trust fund independent and common school districts are the equal and joint beneficiaries, the benefit derived being determined on the population or the number of scholastics residing in such districts.

The Austin Independent School District was not entitled to receive the $998.48 because it had failed and refused to do that which the law expressly commanded it to do. There is no better established rule than the one which declares that mandamus will never issue except upon a clear showing of right. If the assessment made by the Travis County School Board is authorized by chapter 49, and if the title to chapter 49 is sufficient, the Austin Independent School District is not entitled to the writ of mandamus, even though the state superintendent was not authorized to withhold the $998.48, because it has failed and refused to obey the provisions of said chapter 49. Westerman v. Mims, 111 Texas, 39; Texas Mex. Ry. Co. v. Jarvis, 80 Texas, 456, 15 S. W., 1089.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This is a proceeding for mandamus, instituted in the Supreme Court by the relators, the Austin Independent School District, and others, against the respondents, S. M. N. Marrs, Superintendent of Public Instruction of the State of Texas, and others. The facts may be briefly stated as follows:

The Austin district is an independent school district situated in Travis county, and contains a scholastic population of 12,421; and the control and management of the public schools of the district are committed to the Austin School Board. In July, 1930, the County Board of Education, of Travis county, acting in pursuance of and in conformity with the provisions of the Act of 1930, hereinafter set out, ordered an assessment against each school district in the county, including the Austin district, for the payment of the salary and office expenses of the County Superintendent of Public Instruction. The Austin district, through its school board, denied liability and refused to pay the assessment. The Austin district's portion of the county available school funds, for the year 1930, as a result of instructions to that effect issued by the respondent Marrs, has never been turned over to the Austin district by the county authorities, but same still remains in the hands of the county treasurer, who refuses to make any disposition thereof pending this controversy. The Austin district's portion of the above school funds lacks $998.48 of being of sufficient amount to satisfy said

assessment against the district. The respondent Marrs caused the last mentioned sum to be withheld from the Austin district's share of state school funds, apportioned in February, 1931; and said sum remains in the hands of the state treasurer pending this controversy. The relators seek the issuance of the writ of mandamus, directing and commanding respondent Marrs to withdraw and countermand all instructions and orders issued by him as mentioned above, and to compel him to issue such instructions and orders as may be necessary to place at the disposal of the Austin School Board all the state and county available school funds belonging to the Austin district, which the said respondent has caused to be withheld.

Chapter 49 of the general laws passed at the 4th Called Session of the 41st Legislature, so far as material here, reads as follows:

"CHAPTER 49.

"AN ACT to provide for the maintenance of county administration of the public free schools to be prorated to all of the schools of the county and declaring an emergency.
"*Be it enacted by the Legislature of the State of Texas:*

"SECTION 1. That from and after August 31, 1930, the salary and office expenses of the county superintendent of public instruction and such assistants as he may have shall be paid out of the school funds of the common and independent school districts of the county.

"SEC. 2. That the County Board of Trustees shall annually on or before the first (1st) day of August hereafter order a scholastic per capita assessment against each school district within the County in sufficient amount to provide for the payment of the salary and office expenses of the County Superintendent and any office assistants he may have, as is now provided by law, or may hereafter be provided. And the said assessment when legally made and certified to the school districts of the County shall be paid by them for the purpose herein specified.

"SEC. 3. The State Superintendent is hereby authorized and instructed to issue and transmit to County and District School Officials all instructions necessary for the proper observance and administration of this Act.

"SEC. 4. All general laws in conflict herewith are hereby repealed, except such laws as provide for a part of the office expense to be paid from the general revenue of the county. * * *."

■ The relators contend that the above act, which in this opinion will be designated as the act of 1930, is invalid for the reason that the subject of the act is not expressed in the title, as required by section 35, article 3, of the Constitution. The general subject to which the provisions of the body of the act relate is the distribution, among the various school districts of the county, of the cost of maintaining the office of county superintendent of public instruction. To this office, as we shall hereinafter show, pre-existing statutes had attached divers administrative duties which concerned all the public schools in every school district in the county. The language of the title, though not clear in some respects, is sufficient, we think, to apprise the ordinary mind of the subject matter of the body of the act. The contention that the subject of the act is not expressed in the title is overruled.

We come now to the question as to the application of the provisions of the act to the Austin Independent School District. Article 2700 of the statutes reads in part as follows:

"The county superintendent shall receive from the available school fund of their respective counties annual salaries based on the scholastic population of such counties, as follows:

| Population | Salary |
|---|---|
| 3000 or less | $1600.00 |
| 3001 to 4000 | 1800.00 |
| 4001 to 5000 | 1900.00 |
| 5001 to 6000 | 2000.00 |
| 6001 to 7000 | 2200.00 |
| 7001 to 8000 | 2400.00 |
| 8001 to 9000 | 2500.00 |
| 9001 to 10,000 | 2600.00 |
| 10,001 or more | 2800.00 |

"In making the annual per capita apportionment to the schools, the county school trustees shall also make an annual allowance out of the State and county available fund for salary and expenses of the office of the county superintendent, and the same shall be prorated to the schools coming under the supervision of the county school superintendent. The compensation herein provided for shall be paid monthly upon the order of the county school trustees; provided, that the salary for the month of September shall not be paid until the county superintendent presents a receipt from the State Superintendent showing that he has made all reports required of him. The county board of trustees may make such further provision as it deems necessary for office and traveling expenses for the

county superintendent and any assistants he may have; provided that expenditures for office and traveling expenses shall not exceed three hundred dollars per annum, and the county board of trustees may make provision for the employment of a competent assistant for the county superintendent who shall, in addition to his other duties, act as attendance officer; and said board is hereby authorized to fix the salary of such assistant and pay the same out of the same funds from which the salary and expenses of the county superintendent are paid."

■ This statute was subsisting when the act of 1930 was passed. There was not then, and is not now, any statute which places under the general supervision of the county superintendent any of the public schools in independent school districts of the class to which the Austin district belongs. It is apparent, therefore, that if the provision contained in article 2700, to the effect that the burden of paying the salary of the county superintendent, and the expenses incident to that office, shall be "prorated to the schools coming under the supervision of the county school superintendent" is existing law, then the contention that the Austin district is not liable for any portion of such salary and expenses would have a substantial foundation. But it is manifest that the provision just referred to has been superseded by the provisions of the act of 1930, for in that act it is expressly provided that said salary and expenses "shall be paid out of the school funds of the common and independent school districts of the county"; and further provides for a scholastic per capita assessment against "each district within the county" for the payment of such salary and expenses. The clear purpose of the Legislature in passing the act of 1930, was to bring all public school districts, of every character, within the scope of the provisions of that act, regardless of any relevant restrictive provision contained in pre-existing statutes, and to make the prescribed assessment lawfully payable from any available funds belonging to the respective districts. To this extent, pre-existing statutes such as article 2700 and article 2827, were modified by the act of 1930.

■■ Nothing has been found in the Constitution which restrains the Legislature from authorizing the appropriation of available funds, belonging to any school district, to the payment for benefits received by the public schools of such district. It cannot be successfully denied that all the public schools of every school district in a given county are now, and were when the act of 1930 was passed, the immediate beneficiaries of various

duties which the county superintendent is required to perform in the promotion of public school affairs throughout the county. For instance, of those duties, imposed on him by law, which relate (1) to the apportionment of the income arising from the county available school fund; (2) to the transfer of pupils from one school district to another; (3) to the matter of scholastic census; and (4) to the examination of applicants for teachers' certificates, and to the issuance and recordation of such certificates. See R. S., arts. 2692, 2696, 2819, and 2878 to 2882, inclusive. The services, which the law requires the county superintendent to perform in the respects above mentioned, have direct relation to school matters of common concern to all the public schools in the county. It therefore cannot be true, as the relator contends, that the public schools of the Austin district derive no benefits from the administration of the office of county superintendent. The provisions of the act of 1930 are valid, and the Austin district comes within the scope of operation of those provisions. The district is liable for the amount of the assessment laid against it in accordance with the requirements of the act. Nevertheless the writ of mandamus which is sought should be issued against the state superintendent. Statutory provision is made for the funds in controversy to reach the treasury of the Austin district, for the purpose of being administered by the Austin school board in conformity to law. (See R. S., arts. 2692 and 2663). The action of the state superintendent, in causing those funds to be impounded, constitutes an unauthorized interference with said funds in their prescribed course to the district treasury. Clearly the Legislature did not mean, by the provisions of section 3 of the act of 1930, to authorize the state superintendent, in issuing the instructions there provided for, to disregard the statutory provisions to which we have just alluded.

We therefore recommend that the writ of mandamus do issue.

The opinion of the Commission of Appeals is adopted and mandamus awarded.

C. M. CURETON, Chief Justice.