R. E. McKINNEY ET AL V. W. C. BLANKENSHIP ET AL

No. A-5483. Decided October 12, 1955.
(282 S.W. 2d Series 691)

634

*Carlton & Street* and *Ross Calton,* of Dallas, for appellants.

*Guilford L. Jones,* of Big Springs, for Blankenship and others, *John Ben Shepperd,* Attorney General, *Burnell Waldrep, John Davenport, Billy E. Lee* and *John Reeves,* Assistants Attorney General, for Commissioner of Education and State Comptroller.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is a direct appeal in an action for a declaratory judgment as well as an injunction, filed by R. E. McKinney, Ted O. Groebl, John W. Currie, and Foy Bruce, residents of Big Spring, Texas, and McKinney and Bruce as representatives of a group organization of Dallas, Dallas County, as plaintiffs, against Clyde Angel, R. W. Thompson, Tom McAdams, Omar Jones, Robert Stripling, and John Dibrell, composing the Board of Trustees of Big Spring Independent School District, W. C.

Blankenship, Superintendent of Big Spring Independent School District, J. W. Edgar, State Commissioner of Education, and R. S. Calvert, Comptroller of Public Accounts, as defendants.

Appellants alleged in their petition that the Board of Trustees of Big Spring School District had made and entered an order integrating white and negro students in grades one through six in the elementary schools of the District. They sought an injunction to restrain the allocation or expenditure of public free school funds in any manner inconsistent with and contrary to the provisions of Section 7 of Article VII, Constitution of Texas, Article 2900, Revised Civil Statutes of Texas, and Section 1 of Article 2922-13, Vernon's Annotated Texas Civil Statutes. They also sought a declaratory judgment declaring that the foregoing constitutional and statutory provisions were valid and enforceable, and declaring the rights, duties and obligations of the defendants thereunder. In their answer to the petition the Board of Trustees and Superintendent of Big Spring School District also asked a declaratory judgment declaring their rights, duties and legal obligations "under all appropriate and applicable laws and statutes." The Attorney General of Texas intervened and aligned the State with the plaintiffs except in so far as the State Commissioner of Education and the Comptroller of Public Accounts were concerned.

The trial court denied the injunction and by its judgment declared unconstitutional and void Section 7 of Article VII of the Constitution, Article 2900, R.C.S., and certain language, to be noted later, of Section 1 of Article 2922-13. It then declared the remaining portions of Article 2922-13 valid and enforceable.

Appellants' first three points of error assert that the trial court should have granted the injunction to restrain the various defendants from certifying, paying and expending public free school funds in any manner inconsistent with the constitutional and statutory provisions.

■ The duties of the Commissioner of Education to certify the funds to which a school district is entitled and of the State Comptroller to issue and transmit warrants therefor are purely ministerial and mandatory. Article 2922-20, V.A.T.C.S.; Article 2663, R.C.S.; City of Austin Independent School Dist. v. Marrs, 121 Texas 72, 41 S.W. 2d 9. The injunction against these parties was properly denied. To this all parties agree.

As to the other defendants, the trial court's judgment was

undoubtedly predicated on the decision of the Supreme Court of the United States in Brown v. Board of Education of Topeka, Kansas, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873, decided on May 17, 1954, in which final decree was entered on May 31, 1955, 349 U.S. 294, 75 S. Ct. 753, 757, 99 L. Ed. 1083. Brown v. Board of Education was one of four cases from the states of Kansas, South Carolina, Virginia and Delaware, respectively, which were argued together before the Supreme Court because they had to do with segregation of white and negro students in the public schools. The South Carolina, Virginia and Delaware cases involved the constitutionality of state constitutional and statutory provisions requiring segregation. The Kansas statute permitted forced segregation in cities of more than 15,000 population. Rejecting the doctrine " 'separate but equal,' " announced in 1896 in Plessey v. Ferguson, 16 S. Ct. 1138, 163 U.S. 537, 41 L. Ed. 256, the Supreme Court held, in an opinion written by Chief Justice Warren, that separate educational facilities are inherently unequal, and that, therefore, the plaintiffs and others similarly situated for whom the four suits were brought had been, by reason of their segregation, deprived of the equal protection of the laws as granted by the Fourteenth Amendment.

In its final decree the Court said it had declared in its original opinion "the fundamental principle that racial discrimination in public education is unconstitional," and it then proceeded to declare that "all provisions of federal, state or local law requiring or permitting such discrimination must yield to this principle."

■ At the threshold of our consideration of the issues in this case we are met with the argument that since the constitutional and statutory provisions requiring segregation in Texas schools were not before the Supreme Court in the Brown case they were not condemned and we should hold them valid and enforceable. That proposition is so utterly without merit that we overrule it without further discussion, except to say that Section 2 of Article VI of the Constitution of the United States declares: "This Constitution and the Laws of the United States which shall be made in Pursuance thereof, * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitutions or Laws of any State to the Contrary notwithstanding."

■ Section 7 of Article VII of the Constitution and Article 2900 of our statutes, declared unconstitutional and void by the trial court, read as follows: "Sec. 7. Separate schools shall be pro-

vided for the white and colored children, and impartial provision shall be made for both." "Article 2900. All available public school funds of this state shall be appropriated in each county for the education alike of white and colored children, and impartial provision shall be made for both races. No white child shall attend schools supported for colored children, nor shall colored children attend schools supported for white children. The terms 'colored race' and 'colored children', as used in this title, include all persons of mixed blood descended from negro ancestry." To the extent that these constitutional and statutory provisions require segregation of white and negro students in the public schools they are unconstitutional and void and cannot stand as a bar to the expenditure of public funds in integrated schools. It does not follow, however, that Section 7 of Article VII of the Constitution and Article 2900 of the statutes are unconstitutional and void as applied to other subject matter which by their terms they were intended to cover.

■ Even a casual reading of Section 7 of Article VII of the Constitution and Article 2900 of the statutes will make clear that they have a two-fold purpose: they require segregation of white and negro students in the public schools of this state and they require that equal and impartial provision be made for the education of both. The extent of their invalidity should be determined in the light of what was said by the Supreme Court of the United States as limited by the facts of the cases before it. When the language of the Court is so limited it will be evident that what the Court condemned as unconstitutional and void, and all it condemned, were constitutional, statutory, and local law provisions which require or permit forced segregation through and by governmental officers and agencies.

The Supreme Court did not direct immediate and complete integration in all schools. To declare Section 7 of Article VII of the Constitution and Article 2900 of the statutes unconstitutional and void in their entirety would destroy the safeguards found therein which guarantee equal and impartial provision for students in schools not yet integrated. No judgment which would lead to that result should be rendered unless it is necessary, and we find it unnecessary. While it is often said that a law unconstitutional and void for one purpose is unconstitutional and void for all purposes, it is nevertheless held that a state law which may be unconstitutional and void when applied to a subject matter prohibited by the Constitution or laws of the United States may be constitutional and valid when applied to a subject matter not so prohibited. State v. Bevins, 210 Iowa

1031, 230 N.W. 865, appeal dismissed, Bevins v. State of Iowa, 282 U.S. 815, 51 S. Ct. 216, 75 L. Ed. 729; Ratterman v. Western Union Telegraph Co., 127 U.S. 411, 8 S. Ct. 1127, 32 L. Ed. 229; Cooley's Constitutional Limitations, 8th Ed., Vol. 1, p. 366; 11 Am. Jur. 857, Constitutional Law, § 163. We conclude that Section 7 of Article VII of the Constitution and Article 2900 are unconstitutional and void in so far as they require segregation of white and negro students in the public schools of Texas.

The most difficult problem in the case involves a determination of whether Article 2922-13, V.A.C.S., one of several articles (Article 2922-11 through Article 2922-22, V.A.T.C.S.) which were a part, and together constituted the whole, of the Foundation School Program Act (Acts 1949, 51st Leg., p. 625, ch. 334) popularly known as the Gilmer-Aikins Law, prohibits the expenditure of public funds in integrated schools. It is asserted by appellants that it does.

The trial court's declaratory judgment held certain portions of the first two sentences unconstitutional. These two sentences, with the parts declared unconstitutional being italicized (underscored), are as follows:

"The number of professional units alloted for the purpose of this act to each school district, except as herein provided, shall be based upon and determined by the average daily attendance for the district for the next preceding school year, *separate for whites and separate for negroes. Such allotments based upon white attendance shall be utilized in white schools, and allotments based upon negro attendance shall be utilized in negro schools.*" Vernon's Am. Civ. Stat., Art. 2922-13.

Evidently the trial court held the italicized language unconstitutional on the theory that it prohibited the use of public funds in integrated schools and, in practical effect, required segregation of white and negro students. If that were the proper interpretation of that language we might well be faced with the same serious constitutional questions which confronted the trial court of (a) whether the denial of public funds to a school district which undertook a program of integration *required* segregation, and (b) if so, whether the offending language rendered the entire Act unconstitutional and void. But we do not agree that that is the proper interpretation of the language. The language must be interpreted in its context with the remaining provisions of the Act.

Article 2922-12 authorizes all school district in their operation to utilize professional services, operating costs and transportation costs. By Section 4 of Article 2922-15 it is declared that the sum of all professional salaries, operating costs and transportation costs, computed as provided in the Act, shall constitute the total cost of the Foundation School Program. Article 2922-16 provides that the Program shall be financed from local school funds, payments from State and County Available School Funds on a per capita basis, and such additional payments from state appropriations to the Foundation program as are necessary to provide each school district with the professional services, operating costs and transportation costs to which it is entitled as computed and determined under the Act. This Article then provides a formula for determining the amount each school district must contribute toward the program in local funds to be used in the district. Section 1 of Article 2922-15 provides the manner of determining the amount which each district is allotted from the Foundation Fund for operating costs, other than salaries and cost of transportation, and while the amount of this item is based upon the number of teacher units authorized, "separate for whites and separate for negroes," we find in the Act no language which would deny the use of such funds to integrated schools. Section 2 of Article 2922-15 provides the manner of determining amounts to be allotted from the fund for transportation services, but here again there is no language which would deny to integrated schools the use of money allotted for transportation of students.

This brings us to a consideration of Article 2922-13. The Article deals only with the allocation of teachers and administrative personnel. The language declared unconstitutional by the trial court does not stand alone. We have no right to declare it unconstitutional until we determine what it means. To ascertain its meaning we must look to the provisions of Article 2922-12 and the remaining provisions of Article 2922-13.

The parties have treated the word "allotments" in the second sentence of Article 2922-13 as meaning "funds." It does not mean funds. Article 2922-12 defines the term "professional units" as teachers and administrative personnel, who will be referred to hereafter as "teachers." The first sentence of Article 2922-13 provides that "The number of *professional units* allotted" to each school district shall be based upon and determined by average daily attendance of students for the preceding school year, "separate for whites and separate for negroes." Sub-sections (1), (2), (3), (4), (5), (6) and (7) of Section

1 of Article 2922-13 provide the basis for determining the number of teachers to be allotted to each school district. Thus it appears the word "allotments" as used in the sentence under consideration means "teacher," and when it speaks of "such allotments" it speaks of "such teachers." As reconstructed in this setting, the second sentence provides: "Such teachers based upon white attendance shall be utilized in white schools, and teachers based upon negro attendance shall be utilized in negro schools." It follows that the limitation, if any, imposed by the sentence on the use of public funds applies only to their use in the payment of salaries to teachers assigned to teach in integrated schools.

■ Counsel for the Board of Trustees and Superintendent of Big Spring School District admitted in oral argument that there is no necessity or occasion for declaring the last seven words in the first sentence of Section 1 of Article 2922-13 unconstitutional, and we agree. There is nothing in those words requiring segregation, and there is nothing in the Brown decision which can be interpreted as nullifying a state statute directing that white and negro students be enumerated separately, on the basis of average daily attendance, in determining the number of teachers to which a school district is entitled. Whether the first sentence of Article 2922-13 requires that the number of teachers allotted on the basis of attendance of white students be white teachers and the number of teachers allotted on the basis of negro students be negro teachers is not in issue in this case. It is unnecessary to decide the question as a basis for granting or denying the injunctive relief sought, and there is no justiciable controversy between the parties with respect thereto which would authorize a declaratory judgment thereon.

■ Our remaining question is this: Does the second sentence of Section 1 of Article 2922-13, as we have reconstructed it, properly interpreted, prohibit the utilization of teachers in integrated schools and, incidentally, the use of public funds in paying salaries of teachers thus assigned? We answer the question no. We arrive at our answer from a consideration of the sentence considered in its legal and factual context.

■ To give an affirmative answer to the question might well lead to the further holding that the sentence was unconstitutional as *requiring* segregation, and it is elementary that a statute will not be interpreted in such manner as to render it unconstitutional if by any reasonable construction it may be held constitutional. Greene v. Robison, 117 Texas 516, 8 S.W. 2d

655; 39 Texas Jur., 206, Statutes, Section 111. In Brown v. Galveston, 97 Texas 1, 9, 75 S.W. 488, 492, this court approved the rule as stated by Mr. Cooley as follows: " 'The question whether a law be void for its repugnancy to the Constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case'." Moreover, there was surely no need as late as 1949 to adopt any sort of segregation statute in Texas, because Section 7 of Article VII was written into the Constitution seventy-three years before and Article 2900 had been enacted as a statute forty-four years before. On the other hand, there was a need, in the light of the long-standing provisions of Section 7, Article VII, of the Constitution and Article 2900 of the statutes, for the language used in providing the mechanics for complying with their direction for equal and impartial treatment of white and negro students. It seems reasonable to conclude, therefore, that the requirement that the number of teachers calculated on attendance of white students be utilized in white schools and the number of teachers calculated on attendance of negro students be utilized in negro schools was inserted in the Act to guarantee equal and impartial provision for white and negro students in teacher-pupil load.

The language of the sentence is mandatory to accomplish its purpose but it is not prohibitory. While it requires the use of teachers allotted on the basis of attendance of white students in white schools, and the use of teachers alloted on the basis of negro attendance in negro schools, it does not provide that none of such teachers may be used in integrated schools.

There are other considerations. The legislature has made appropriations to finance the state's share of the Foundation Fund Program for the school years of 1955-56 and 1956-57; it has authorized the certification and payment to school districts of all funds necessary for operating costs of all schools, with no restriction or prohibition against use of such funds in integrated schools; it has authorized the certification and payment to school districts of all funds necessary to defray the cost of transporting students to all schools, with no restriction or prohibition against use of such funds to transport students to integrated schools; it has authorized the employment of and the payment of salaries to all of a given number of teachers in each school district and has appropriated money to help pay their salaries; it is a matter of law (Arts. 2750 and 2693, R.C.S.) that teachers work under contracts of employment and a matter of common knowledge that such contracts are usually and customarily exe-

cuted several months before the beginning of the school year for which they are executed. Under these circumstances to hold that officials of a school district may not utilize the whole number of teachers, employed and entitled to their salaries under contract, by assigning some of them to teach in integrated schools, not proscribed by the Constitution and laws of this state, once the need for teachers in the segregated schools in the district, if any, has been satisfied, would lead to a foolish result. It would mean that the legislature had authorized the use of public funds to transport students of both races to a common building and had authorized the use of public funds to pay all operating costs of the integrated school thus established, but that a number of teachers, employed under contract for the full school year and entitled to demand their salaries thereunder, could not teach in the integrated school thus established but would remain idle and the students in the school would be left without instruction. Unless there is no alternative, a statute will not be interpreted so as to lead to a foolish or absurd result. 39 Texas Jur. 222, Statutes, Sec. 118. While the law controls the number of teachers allotted to a school district, the assignment of teachers, once the need for teachers in segregated schools is reasonably satisfied, is a matter left largely to the discretion of local school authorities.

■ The dominant purpose of the Gilmer-Aikin Act was, by its own terms, "to guarantee to each child of school age in Texas the availability of a minimum Foundation School Program for nine (9) full months of the year, and to establish the eligibility requirements applicable to Texas public school districts in connection therewith." Article 2922-11. The construction we have given the second sentence of Section 1 of Article 2922-13 will fulfill, not defeat, that purpose.

From what has been said it follows that no funds of the school district are being expended in a manner inconsistent with the valid provisions of Section 7, Article VII, of the Constitution or Articles 2900 and 2922-13 of our statutes, and the judgment of the trial court denying an injunction is therefore affirmed.

The trial court's declaratory judgment is modified as follows:

Section 7 of Article VII of the Constitution is declared unconstitutional and void to the extent that it requires segregation of white and negro students in the public schools.

The first sentence of Article 2900 is declared constitutional and valid. The second sentence of the article is declared unconstitutional and void. The third sentence is immaterial.

The first two sentences of Article 2922-13 are given a construction consistent with this opinion and are declared constitutional and valid.

Opinion delivered October 12, 1955.

MR. JUSTICE GRIFFIN joined by JUSTICE WALKER, concurring.

I concur in the result which has been reached by the majority and agree with the majority opinion except as to the construction of the provisions of Art. 2922-13. If an act of the Legislature can be given any reasonable construction which will permit the law to be sustained as constitutional and valid, that construction should be adopted. But we should not adopt a strained and unreasonable construction simply to enable us to say that the act is constitutional.

It is my opinion that the language "such allotments (whether of funds or teachers) based upon white attendance shall be utilized in white schools, and allotments based upon negro attendance in negro schools" is mandatory and exclusionary. I can think of no stronger language than "shall be utilized." It requires in no uncertain terms that the allotments or teachers be used in either negro schools or white schools, and there is nothing in the act authorizing the school authorities to use them in integrated schools.

To hold this second sentence valid would in this case give force and effect to a law requiring separate schools for whites and negroes. The object of this particular suit is to enjoin the use of Foundation School funds in schools which have been integrated by the local school board. The result of the injunction, if granted, would be the abandonment of the limited desegregation policy thus voluntarily adopted by the local school authorities, unless the trustees should choose the unlikely alternative of operating without Foundation School funds. It is my opinion, therefore, that under the decision of the United States Supreme Court in the Brown case, the quoted provisions of Art. 2922-13 are unconstitutional when applied to the facts of this case.

In view of all the provisions of the Foundation School Pro-

gram Act, and particularly the purpose and severability sections, and the primary purpose which motivated the Legislature to enact the statute, it is also my opinion that the quoted provision is severable and that its unconstitutionality when applied to a case of this character does not affect or impair the validity and operation of the remainder of the statute.

All the reasoning of the majority opinion as to equal and impartial support of the public schools for both races would apply; the Foundation School Program Act will be fully and completely effective to provide support for schools that are legally segregated under the United States Supreme Court's decision in the Brown case, and for schools which have been integrated by local school boards using their best judgment and discretion (as has been done in this case), and for support of either or both.

Opinion delivered October 12, 1955.