**Nathaniel JACKSON, a Minor, et al., Plaintiffs,**

v.

**O. C. RAWDON et al., Defendants.**

**Civ. A. No. 3152.**

United States District Court
N. D. Texas, Fort Worth Division.

Nov. 21, 1955.

L. Clifford Davis, Fort Worth, Tex., U. Simpson Tate, Dallas, Tex., Robert L. Carter, Thurgood Marshall, New York City, for plaintiffs.

Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Tex., for defendants.

ESTES, District Judge.

Plaintiffs seek both a temporary and permanent injunction against defendants who are the Board of Trustees and the Superintendent of the Mansfield Independent School District and the Mansfield Independent School District, a body corporate, to enjoin and restrain defendants from denying and refusing to plaintiffs the right and privilege of attending the public high school maintained by defendants within the boundaries of the Mansfield Independent School District.

This case, filed October 7, 1955, came on for hearing on the 7th day of November 1955, on plaintiffs' application for temporary injunction pursuant to setting made by the Court October 13, 1955. Plaintiffs in open court withdrew their plea that a statutory three-judge court be convened pursuant to Sections 2281 and 2284, Title 28, United States Code, to hear the cause, and expressly requested that the case be heard and determined now not only on the plea for temporary injunction, but on the permanent injunction demanded in the action on the merits as well, stating that the same evidence would be offered on both hearings. Plaintiffs' request was granted by the Court.

The contentions of the parties were well pleaded, and the evidence was heard fully.

 This is a suit in equity, on a mimeographed complaint, brought as a class action by three negro minors and others alleged as "so numerous as to

make it impracticable to bring all of them" into court, who reside in the Mansfield Independent School District, a rural district at the edge of Fort Worth, Texas. The employment of the device of a class suit here is indiscriminate if not improper where only 12 colored high school students are involved, which indicates that the other nine negro students did not wish this action at this time. Likewise the failure of one of the three plaintiffs to appear in court and testify raises a question as to whether he wanted to change schools now.

In finding the equities between the parties, I see on the one hand, the situation of this rural school board composed primarily of farmers, agents of the State of Texas (whose segregation laws were not voided by the State Supreme Court until the opinion of October 12 and mandate issued October 28, 1955, after the opening of school on September 2, 1955) struggling with breaking the tradition of generations; opening their meetings with prayer for solution; studying articles in magazines and papers; holding numerous meetings; passing resolutions and appointing a committee to work on a plan for integration—making the start toward "obeying the law" which their abilities dictated. Further, the trustees now assure the Court that they are continuing their efforts and will work out desegregation. Their committee conferred with these plaintiffs in the presence of plaintiffs' parents, and accepted and fulfilled the request made by plaintiffs with their attorney in August 1955 for certain administrative steps as a solution for this period of transition, the school year 1955–56. These administrative steps consisted of making arrangements for these students to attend the I. M. Terrell School in the city of Fort Worth; the application for and consummation of transfer of state allocated funds to the Fort Worth Independent School District; and the procuring of a special bus for transporting these students to the Fort Worth School. After the accomplishment of these administrative steps taken at the request of plaintiffs, and after school had been in session more than a month, this action was filed.

On the other hand, I find three plaintiffs, only two of whom testify, high school students well into their year's work at I. M. Terrell School in Fort Worth, by their own testimony happy and well-adjusted, taking vocational courses not available at Mansfield High School, testifying that their reason for wanting to transfer to Mansfield High School is the inconvenience of early rising and late return home due to the round trip of 36 to 40 miles daily. (Testimony showed that other students of this rural area also arise early and travel considerable distances to and from school.) One of the plaintiffs testified that if he participated in athletics after school, he would have to use public transportation or otherwise furnish his own means of travel home after school. (Testimony revealed that the same situation exists for Mansfield High School students.) One plaintiff testified that he formerly resided within the boundaries of the Fort Worth Independent School District, attending school there until he moved into the Mansfield Independent School District in August 1955.

After the accomplishment of the above mentioned administrative processes at plaintiffs' request, and after school had begun, it appears to the Court that the issuance of an injunction to effect entrance into Mansfield High School at this time would be unjust to the school trustees and the students alike. It is a matter of common knowledge that the transfer of a child in the middle of a school year, as this action seeks, may bring about scholastic and emotional difficulties. This Court cannot in good conscience force this result by the harsh remedy of injunction, nor does it believe that the Supreme Court of the United States has made such course adamantine. In Brown v. Board of Education Chief Justice Warren admonishes that "the courts will be guided by equitable prin-

**938**

ciples * * * characterized by a practical flexibility * * * and by a facility for adjusting and reconciling public and private needs."[1]

The United States Supreme Court decision in the Brown case that "racial discrimination in public education is unconstitutional"[2] was interpreted by the Supreme Court of Texas in McKinney v. Blankenship, decided October 12, 1955, as nullifying provisions of the Texas Constitution and statutes requiring segregation in the public schools of Texas.[3] It is impossible, however, simply to shut our eyes to the instant need for care and justice in effectuating integration. The directions of the United States Supreme Court allow time for achieving this end. While this does not mean that a long or unreasonable time shall expire before a plan is developed and put into use, it does not necessitate the heedless and hasty use of injunction which once issued must be enforced by the officers of this Court, regardless of consequences to the students, the school authorities and the public. This school board has shown that it is making a good faith effort toward integration, and should have a reasonable length of time to solve its problems and end segregation in the Mansfield Independent School District. At this time this suit is precipitate and without equitable justification.

"Improvident granting of such injunctions by a single judge, and the possible unnecessary conflict between federal and state authority" are "always to be deprecated."[4]

Accordingly, I find that judgment should be entered denying the relief prayed for herein, and that this action should be dismissed without prejudice.

Let the attorneys for defendants prepare and present a judgment in accordance with this memorandum decision.

1. Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 756, supplementing prior decision reported in 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.

2. Brown v. Board of Education of Topeka, 349 U.S. 294, 75 S.Ct. 753.

3. McKinney v. Blankenship, Tex., 282 S. W.2d 691.

4. Cumberland Telephone & Tel. Co. v. Louisiana Public Service Commission, 1922, 260 U.S. 212, 216, 43 S.Ct. 75, 76, 67 L.Ed. 217.