C. J. KREGER et al., Appellants,

v.

The BOARD OF TRUSTEES OF GEORGE-TOWN INDEPENDENT SCHOOL DISTRICT, Appellees.

No. 11099.

Court of Civil Appeals of Texas.

Austin.

May 29, 1963.

Rehearing Denied June 19, 1963.

Ashton, Allen & Smith, L. Hamilton Lowe, Austin, for appellants.

William S. Lott, Georgetown, for appellee.

ARCHER, Chief Justice.

This is an appeal from a judgment denying the injunctive relief sought by appellants C. J. Kreger and wife, Jacquelyn Kreger, C. E. Harris, Jr. and wife, Zenita Harris, Wendell Osborn and wife, Alice C. Osborn, Norman W. Spellmann and wife, Betty B. Spellmann, Harvey E. Miller and wife, Ara Belle Miller, Donel Scroggins and wife, Audrey May Scroggins, Clark Davis, Gordon B. Wolcott and wife, Elizabeth Wolcott, E. C. Girvin and wife, Virginia L. Girvin and George E. Nelson, in a suit by them as tax paying property owners residing within the Georgetown Independent School District to restrain the Board of Trustees from expending funds of the District for an alleged illegal purpose, to-wit: the erection and maintenance of buildings and facilities for the school system for segregated use.

The appeal is founded on three points assigned as error and read:

"*First Point:* The error of the Trial Court in refusing to restrain the Appellees from expending any funds belonging to the Georgetown Independent School District for the purpose of constructing any building or other facility which is designed and planned to provide segregated schools within the District, where such segregation is based solely upon the race or color of the students segregated.

"*Second Point:* The undisputed evidence and the judicial admissions of the Appellees establish the fact that the District will, unless restrained, proceed to expend funds belonging to the District for an illegal purpose; towit, the construction and maintenance of a system of racially segregated schools, and

the Trial Court erred in refusing to enjoin such illegal expenditures.

"*Third Point:* In denying the injunctive relief sought by the Appellants, the Trial Court abused his discretion and such error requires a reversal of the judgment below."

The points are submitted together.

Appellants take the position that the ultimate issue is:

"May a public school district legally expend its funds for the construction of a racially segregated system of public free schools with the design and purpose of perpetuating such a system in defiance of the constitutional prohibition against racial discrimination in such schools?"

Georgetown has a population (1960 census) of 5,218 with an enrollment in white schools of 1,064 and 165 colored children and of which latter group 40 or 45 are in high school.

A bond issue in the amount of $525,000 was authorized by an election on July 7, 1962, for the purpose of the "purchase, construction, repair and equipment of public free school buildings within the limits of such district and the purchase of the necessary sites therefor."

The Board made plans to erect a new junior high school for white pupils exclusively, and to expand the white high school facilities, to which Negro children are not admitted, and to erect an entirely new segregated Negro high school.

There can be no question but that the school board plans two separate school systems, according to the testimony of members of the Board who testified respectively that they were going to build a segregated system, a school on the west side for Negroes exclusively to be a twelve grade school.

The members testified that they so told the voters of their plans prior to the elec-

tion, and would not be willing to erect any of the buildings in the plan, if enjoined from building the west side school. One member testified that it was the purpose to build a dual system and could not integrate without complying with Article 2900a, Vernon's Ann.Civ.St. and intended to have segregated schools unless ordered to integrate by court order or by vote.

The superintendent of schools testified that he did not enroll Negro students in the white schools because the Board had not authorized him to do so, and that it was against the law to do so.

Appellees take the position that the number of school buildings and the selection of sites are matters vested by law in the Board, and that the expenditure of funds for the construction of school buildings is not illegal and that the court did not abuse its discretion in denying the injunction.

The testimony shows that the Board will abide by a court order directing integration or by a majority vote of the voters in favor of abolishing the dual school system.

Appellees say that whether Article 2900a, V.A.C.S., is constitutional or not is of no concern in this case, and could not be decided here, and that the statute was in the book and that the members of the Board felt bound by it, but were complying with the wishes of the people more than they were with the provisions of the statutes.

We do not believe that the Board can legally expend the large sum of money provided by the bond issue authorized for the purpose as contended for. We recognize the power and authority conferred on school trustees by Articles 2749 and 2772, V.A.C.S., to control and manage schools.

The prime question as we view it is the propriety and legality of the expenditure of funds for the construction of school buildings for use as racially segregated system of public free schools with the avowed design and purpose of perpetuating such a system.

■ There can be no question but that Article 2900a is unconstitutional as declared to be by our Supreme Court in McKinney v. Blankenship, 154 Tex. 632, 282 S.W.2d 691. It was there stated:

"To the extent that these constitutional and statutory provisions require segregation of white and Negro students in the public schools they are unconstitutional and void and cannot stand as a bar to the expenditure of public funds in integrated schools."

In an opinion of the Attorney General of Texas, No. WW–1490, December 10, 1962, in which the authorities are reviewed, it was held that Article 2900a is unconstitutional.

In the case of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, it was held the doctrine of "separate but equal" had no place in the field of education.

As testified to by the Board members the purpose of the location of the school buildings is to avoid integration therein and to maintain separate schools.

J. D. Thomas, secretary of the Board of Trustees, testified:

"A We were going to build a segregated system.

"Q And you were going to have the colored, the Negroes, in one building, and one building only?

"A Yes, sir."

At a meeting of the Board on April 30, 1962, the following statements are taken from the minutes:

"Dr. Gaddy raised the question of integration and asked how the board as a whole felt.

"Mr. Wolf suggested the board vote as to how it wishes to integrate.

"Mr. Doering expressed his feelings about the matter of integration and his personal observations.

"The question of how many buildings we plan to build was brought up by Dr. Gaddy. Mr. Wolf replied by making a motion that we plan to build a junior high for grades 6-7-8 and a colored school grades 1-12 on West Side. Ihms seconded the motion. Dr. Gaddy wanted to know plans for integration if and when the time comes. Wolf said he would add to his original motion, if and when integration came it would be on a transfer basis. A vote was taken, motion carried 5 to 1. Dr. Gaddy voting against."

Mr. Thomas further testified:

"Q  Mr. Thomas, do you think from your ad in the *Sun*, that all the people in the Georgetown Independent School District were informed that you intended to continue segregation of your public schools?

"A  Yes, sir, I think so.

"Q  You think that they all knew that, without exception?

"A  Yes, sir.

"Q  And that was your intent and purpose, to inform them that you intended to continue segregation in Georgetown School District?

"A  Yes, sir.

*    *    *    *    *    *

"Q  Counsel asked you a moment ago if you intended—the Board intended to continue segregation by building this West Side School for all colored and these others for all white. Now, would you state that it would be the Board's intention to continue that from now on, or just until such time as this district is legally integrated.

"A  Until this district is legally integrated."

Carl Doering, president of the Board, testified:

"Q  And you intend to build that school for segregated school system; is that correct?

"A  At the time being, yes, sir.

*    *    *    *    *    *

"Q  Now, is the plan to build, is this your plan, or is this the understanding of the plan that you have, that you will build a twelve-grade school system on the west side for Negroes?

"A  Yes, sir.

"Q  And you don't intend to do anything else?

"A  No, sir.

"Q  And if you can't do that, you don't intend to spend any of this money?

"A  No, sir.

"Q  If the court restrains you from building that building, then you would be—you would feel that you were duty-bound, under your plan, not to do anything?

"A  We outlined it to the voters, and they passed the bond issue on that particular reason, and I am not going to tell the public one thing and turn around and do the opposite.

"Q  Are you telling me that it is your opinion, or that you say the voters voted on it because it was a segregated school system, and they wouldn't vote on anything else?

"A  No, sir, I didn't say that. I said we presented our whole plan, we outlined the whole plan, and they had it before them, and I don't think there is anybody that didn't understand it.

"Q Did you tell them that this was a Negro school over there on the west side?

"A The brochure and newspaper advertisement said it replaced the old Carver System.

"Q And that would imply that it was going to be a Negro School?

"A Certainly.

"Q And nothing else?

"A I would think so.

"Q And that is what you intend to have down there?

"A Yes, sir.

\* \* \* \* \* \*

"Q Now, Mr. Doering, is there any reason that you know of for not integrating the schools?

"A At this time?

"Q At this time.

"A Yes, sir.

"Q What is that reason?

"A There are only two ways that a school district can integrate, and one is by petition, voters vote on it, and the other way, by Federal Court order.

"Q Now, why do they have to vote on integration?

"A I don't know.

"Q Is it because of 2900a, a statutory provision?

"A I suppose.

"Q You what?

"A I assume it is; I don't know.

"Q You have told me that, have you not?

"A I don't remember whether I told you.

"Q You did tell me that the reason that you couldn't integrate was because of 2900a, that you would be personally fined if you did?

"A Yes, sir, that's right.

"Q You did tell me that, didn't you?

"A I don't know whether I told you; I have told somebody.

"Q You have told other people, then?

"A Yes, sir.

"Q And that is the main reason that you can't integrate these schools?

"A Yes, sir."

Jay Wolf, a member of the Board, testified:

"Q Mr. Wolf, did you vote at a meeting to call a bond issue?

"A Yes, sir.

"Q Did you vote to put in the paper certain articles saying that you would build certain schools in this district?

"A I did.

"Q Did you intend by that to imply to the people, or convey to the people that you were going to build a dual system of education facilities in this community?

"A Yes, sir; that's right.

"Q And that is your intent and purpose?

"A That's right.

"Q Now, you don't have any other intention?

"A No other intention.

"Q And you haven't changed or modified it?

"A Not a bit.

"Q In your mind, and you don't ever intend to change or modify it?

"A I would accept the direction of higher authorities; that would be the only way I would change my mind."

There was testimony from other members of the Board of like tenor to that of those members from whose testimony we have quoted excerpts and we see no need to quote from such.

We reiterate that the Board has the powers, duties and responsibilities as are conferred on school trustees and we are not in any manner imposing on such when done in a legal manner and for a legal purpose.

In Gomillion v. Lightfoot, 364 U.S. 399, 81 S.Ct. 125, 5 L.Ed.2d 110, it was held:

"When a State exercises power within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right."

In Barr v. Thompson, Tex.Civ.App., 350 S.W.2d 36, no writ history, the Court said:

"Equity looks to the substance and not the shadow, to the spirit and not the letter. It seeks justice rather than technicality, truth rather than evasion, common sense rather than quibbling."

In N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405, it was held that "A State cannot foreclose the exercise of constitutional rights by mere labels" and in a concurring opinion Justice Douglas stated: "The fact that the contrivance used is subtle and indirect is not material to the question. 'The Amendment nullifies sophisticated as well as simple-minded modes of discrimination.'"

We believe that the trial court had the power and the duty to restrain the unlawful spending of the money. Crow v.

Burnet Independent School Dist., Tex.Civ. App., 304 S.W.2d 439, er. ref. n. r. e.

As was stated in Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84:

"The fact that the written words of a state's laws hold out a promise that no such discrimination will be practiced is not enough."

Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5.

The judgment of the Trial Court is reversed and judgment is here rendered enjoining defendants from expending any funds belonging to the Georgetown Independent School District for the purpose of constructing any building or other facility which is designed, planned or calculated to provide segregated schools within the Georgetown Independent School District where such segregation is based solely upon the race or color of the students segregated.

Reversed and rendered.