

# THE ATTORNEY GENERAL
# OF TEXAS

**JIM MATTOX**
**ATTORNEY GENERAL**

April 23, 1990

Honorable Paul T. Wrotenbery
Chairman
State Board of Insurance
1110 San Jacinto
Austin, Texas 78701-1998

Opinion No. JM-1163

Re: Authority of a non-resident property and casualty insurance agent to transact certain business in Texas (RQ-1834)

Dear Mr. Wrotenbery:

You ask several questions regarding activities of a non-resident property and casualty insurance agent:

Assuming the policies in question were underwritten by an authorized insurer, contained the proper countersignatures and were written at the correct rates, we ask your opinion as to the following:

1. May a non-resident property and casualty insurance agent who acts as an agent for a corporation domiciled in another state enter the state to sell insurance to Texas residents who are corporate affiliates? May such agent who acts as an agent for a franchisor enter the state . . . to sell insurance to Texas residents who have the right to use the franchise's name and products?

2. When the initial solicitation occurred in another state and subsequent contacts by telephone or mail are incidental to the initial contact, may a non-resident property and casualty insurance agent make subsequent contacts with a resident of this state for the purpose of completing an insurance transaction?

3. When the non-resident . . . agent who sold the original insurance policy calls a Texas resident asking the insured whether he wishes to renew his policy, is such act a

> direct solicitation prohibited by the statute?

We assume that by non-resident property and casualty insurance agent you mean a "licensed non-resident insurance agent" as provided for in article 21.11 of the Insurance Code.

Article 21.11, prior to 1955, made no provision for "licensed non-resident insurance agents" but simply prohibited resident licensed property and casualty insurance agents from paying commissions to non-resident agents or other unlicensed persons. In 1955, the legislature amended article 21.11 to permit "local recording agents" to divide commissions on policies "originated" by a "licensed non-resident insurance agent," and "covering property or persons in this state." H.B. 103, Acts 1955, 54th Leg., ch. 209, at 605. Under article 21.14, section 3, a "local recording agent" must be a resident of this state.[1] Article 21.11 as amended defines and provides for the licensing of non-resident agents, who must be licensed by, and residents of, states which do not prohibit residents of this state from acting as insurance agents within.[2]

Article 21.11 continues:

---

1. Article 21.14, section 3, subsection b, makes an exception for local recording agents residing in towns on the state line.

2. The emergency provision in section 2 of the 1955 enactment indicates that the purpose of the amendment was to place Texas in a reciprocal relation with other states, the laws of which restricted division of commissions with non-resident agents to agents from states permitting division of commissions with their resident agents:

> The fact that many other States issue licenses to Non-Resident Agents and permit the division of commission on a retaliatory basis, makes it possible for a Recording Agent of Texas to obtain a Non-Resident Agent's license in these States and thereby citizens of Texas having property located in these States are prevented from having the services of their own Recording Agents of Texas for such risks, creates an emergency . . . .

> The issuance of a Non-Resident Agent's license shall be for the purpose of permitting a Local Recording Agent of Texas to divide commission with an agent of another State on insurance covering property or persons in this State placed with or through a Local Recording Agent, and to permit an agent of another state, who qualifies and is licensed as a Non-Resident Agent, to inspect and service such risks in Texas, which license shall be subject to the same fees, qualifications, requirements and restrictions as apply to Local Recording Agents of this State, except that an office shall not be maintained in this State by a Non-Resident Agent and all such insurance transacted shall be through licensed Local Recording Agents as provided in Article 21.09 of the Texas Insurance Code . . . .

Article 21.09 prohibits insurance companies authorized to do business in Texas from allowing any non-resident person, agent, firm, or corporation to issue insurance policies on persons or property located in this state except through local recording agents, with certain exceptions not relevant to your concerns. The above-quoted language of article 21.11 authorizing licensed non-resident agents to "inspect and service risks" in Texas, and the reference earlier in the article to such non-resident agents dividing commissions with local recording agents on policies "originated" by non-resident agents, indicates that the legislature contemplated that non-resident agents could perform some acts which would constitute "doing an insurance business in this state." See Ins. Code art. 1.14-1, § 2 (describing what acts constitute "doing an insurance business in this state"). However, subsection (c) of article 21.11 specifically provides:

> Nothing contained herein shall be construed . . . to permit any person or firm who holds a Non-Resident Agent's license as authorized herein to engage in any form of direct solicitation of insurance within this State.

It is apparent that the focus of your concern in your questions is whether the activities described constitute "direct solicitation" by a non-resident agent in violation of the above-quoted language of article 21.11. "Solicitation" as used in article 21.11 is not statutorily defined. The ordinary meaning of "solicitation" is the "act or an

instance of soliciting."  "Solicit" ordinarily means to "make petition to," "entreat," or "approach with a request." See Webster's New Collegiate Dictionary (9th ed. 1983). From the contexts of the term's usage in other provisions of the Insurance Code, it appears that "solicitation of insurance" is distinct from negotiating, writing, signing, or executing policies. See, e.g., Ins. Code art. 1.14-1, § 2(a)(6) (doing business of insurance defined to include "solicitation, negotiation, procurement, or effectuation of insurance"); id. art. 21.14, § 2 (a "local recording agent" is a person authorized inter alia "to solicit business and to write, sign, execute, and deliver policies of insurance").

The word "direct" in the language of article 21.11 prohibiting "direct solicitation" refers, we think, to solicitation of insurance business not done through a resident Texas local recording agent, authorized under articles 21.09 and 21.14.[3] As previously mentioned, article 21.09 prohibits an insurer authorized to do business in this state from allowing any non-resident to issue, etc., policies of insurance on property or persons located in this state except through regularly licensed local recording agents. Article 21.14 provides that a local recording agent is a person authorized "to solicit business, write, sign, execute, and deliver policies." Compare Ins. Code art. 1.14-2, § 2(a)(2) ("surplus lines" license limited to acceptance of business through a regularly "licensed surplus lines agent" and shall not authorize surplus lines agency "to transact business directly with the applicant for insurance").

Though a licensed non-resident property and casualty insurance agent may not under article 21.11 make "direct solicitations" of insurance in this state, other language in

_____

3. Article 21.14 also provides in section 2 for licensing of "solicitors" who "engage in the business of soliciting insurance on behalf of a local recording agent." In determining that "solicitation" by non-resident agents must be done through local recording agents, we mean to include scenarios wherein the solicitation done "through" local recording agents is actually performed by such solicitors acting on the former's behalf.

There is an exception in section 2 of article 21.14 for various kinds of nonprofit societies, associations, and other institutions described there.

that article indicates that  he may "originate" policies  of insurance.  Construing  these  provisions  of  article  21.11 together, we are of the  opinion that they contemplate  that the non-resident agent may work up a proposal for  providing property or casualty insurance from the insurer-principal he represents  to  prospective  clients  (i.e.,  "originate"  a policy) but  that  contacts  with  prospective  clients  for purposes of proposing they buy  such insurance must be  made through a  Texas local  recording  agent (i.e.,  no  "direct solicitation").

In response to  your first question  -- whether a  non-resident property and  casualty insurance  agent, acting  as agent for  a non-Texas  domiciliary corporation,  may  enter Texas  to  sell  insurance  to Texas  resident  corporate affiliates, or whether  such agent acting  for a  franchisor may  enter  Texas  to  sell  insurance  to  Texas  resident franchisees -- we  think  it  follows  from  the  foregoing discussion that such non-resident  agent may enter Texas  to sell such  insurance  so  long  as  the  contacts  with  the prospective  clients,  be  they  corporate  affiliates  or franchisees or others,  for purposes of  proposing they  buy such insurance,  are made  through a  Texas local  recording agent.

In your second question you outline a scenario in which the non-resident agent's "initial contacts" are made out-of-state, but  "subsequent  contacts . . . for the  purpose  of completing  the  transaction"  are  made  by  the  agent  by telephone or mail, presumably while the prospective  clients are located in this state.  We think that the answer to your second question would depend on the facts of the  particular case.  If  the  "subsequent contacts"  could  be  accurately characterized as "solicitations,"  they would be  prohibited by article  21.11  unless  made through  a  local  recording agent.  For example, if a "subsequent contact" consisted of: "I spoke  at  the  convention of  corporate  affiliates  you attended in  St.  Louis  about insurance  programs.  I  can offer, and I am phoning you now, to ask whether you would be interested in  one of  those programs"  -- such  "subsequent contact" would  probably be  characterized as  a  prohibited "direct solicitation" under article 21.11.[4]

---

4.  Article 1.14-1  of  the code  provides  in  section 3(b):

In respect to the insurance of subjects resident,
                                        (Footnote Continued)

We do not think that the fact that such "subsequent contact" is made by mail or telephone takes such contact out of the article's prohibition on "direct solicitation" if the prospective client is located in this state at the time of the contact. Article 1.14-1, section 2(a), in describing which acts "effected by mail or otherwise" constitute doing an insurance business in this state, specifically provides that "the venue of an act committed by mail is at the point where the matter transmitted by mail is delivered." We see no reason why a telephone contact from out-of-state to a prospective client in this state should be treated differently than a contact by mail.

In your third question you ask whether a non-resident agent's telephoning a Texas resident, presumably while the latter is in Texas, asking whether the latter wishes to renew a policy the non-resident agent had initially sold to him, constitutes a "direct solicitation" under article 21.11. Again the facts of the particular case -- for example, provisions, if any, in the original contract regarding renewals -- might have a bearing on the determination whether such contact is a "direct solicitation" under article 21.11. We would observe, however, that absent any mitigating factors, the non-resident agent's asking the Texas client, by telephone, mail, or in person, to enter into a new contract for a policy, would appear to be "solicitation," which if not done through a local recording agent would be "direct" and therefore in violation of article 21.11. Concededly, article 21.11 does provide that licensure of non-resident agents is for the purpose, _inter alia_, of permitting such non-resident agents to "inspect and service . . . risks in Texas." However, in view of the article's explicit prohibition on "direct solicitation," we think that whatever scope the language "inspect and service . . . risks" has, if solicitation is involved, such solicitation may not be done directly, but must rather be done through a Texas local recording agent in order to comport with the provisions of article 21.11.

Finally, we note that though you do not raise in your request any constitutional issues with respect to the

---

(Footnote Continued)
    located or to be performed within this state this section shall not prohibit the collection of premium or other acts performed outside of this state by persons or insurers authorized to do business in this state provided such transactions and insurance contracts otherwise comply with statute.

application of the article 21.11 prohibition on direct solicitation by non-resident agents, a brief submitted to this office in response to your request argues that those provisions must be construed in light of the U.S. Constitution's guarantees of free speech (first amendment), equal protection (fourteenth amendment), and that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states" (article IV, section 2, clause 1). See, e.g., McKinney v. Blankenship, 282 S.W.2d 691 (Tex. 1955) (statute will not be interpreted so as to render it unconstitutional if by any reasonable construction it may be held constitutional).

The above-mentioned brief relies principally on three federal court cases in arguing that a prohibition on direct solicitation by non-resident property and casualty insurance agents would violate the federal constitution. In Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869 (1985) the Supreme Court considered whether Alabama's imposition of a higher gross premium tax on out-of-state insurance companies than on domestic ones violated the equal protection clause. The Court noted that in Southern Life Ins. Co. v. State Bd. of Equalization of California, 451 U.S. 648 (1981), they had considered it

> now established that, whatever the extent of a State's authority to exclude foreign corporations from doing business within its boundaries, that authority does not justify imposition of more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations, unless the discrimination between foreign and domestic corporations bears a rational relation to a legitimate state purpose. (Emphasis added.)

Ward at 875. The Court in Ward found that under the circumstances there the purposes of the Alabama statute, as argued by the state -- promotion of domestic business and investment in Alabama assets[5] -- were not legitimate state purposes justifying, under the Equal Protection clause, the discriminatory tax, and remanded the case for further proceedings not inconsistent with its opinion.

------

5.   The Alabama statute provides for reduction of the tax rate differential for out-of-state insurance companies investing in Alabama assets and securities. See Ward, at 870.

In <u>Silver v. Garcia</u>, 760 F.2d 33 (1st Cir. 1985) the first circuit court of appeals ruled that Puerto Rico's licensing provisions for insurance consultants requiring that they be Puerto Rico residents violated the privileges and immunities clause (article IV, section 2, clause 1, U.S. Constitution). The court noted, citing <u>Toomer v. Witsell</u>, 334 U.S. 385 (1948), that "the privileges and immunities clause is not an absolute." <u>Garcia</u>, at 38.

> Discrimination against nonresidents is permitted where:
>
> > (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective . . . . In deciding whether the discrimination bears a close or substantial relationship to the State's objective, the Court has considered the availability of less restrictive means.
>
> > . . . .
>
> > In order for there to be a 'substantial reason for the difference in treatment,' nonresidents must be shown to constitute a 'peculiar source of the evil at which the statute is aimed.'

<u>Id.</u> (citations omitted). The <u>Garcia</u> court found, however, that

> Puerto Rico has not offered substantial reasons for its discriminatory treatment of nonresident insurance consultants, nor has it shown a substantial relationship between these reasons and its discriminatory treatment of nonresidents.

<u>Id.</u> at 40.

In <u>Supreme Court of New Hampshire v. Piper</u>, 470 U.S. 274, 288 (1985), the Supreme Court ruled that

> New Hampshire's bar residency requirement violates the Privileges and Immunities Clause of Art. IV, § 2, of the United States Constitution. . . . A state may discriminate against nonresidents only where its reasons are 'substantial,' and the difference in

> treatment bears a close or substantial relation to those reasons. No such showing has been made in this case.

As to the brief's assertion that prohibition of "direct solicitation" by non-resident property and casualty insurance agents restrains "commercial speech" in violation of the first amendment, we note that the courts, as with the equal protection and privileges and immunities claims addressed in Ward, Silver, and Piper, do not treat the first amendment's freedom of speech guarantee as an absolute. In Virginia Pharmacy Bd. v. Virginia Consumer Council, 425 U.S. 748, 770 (1976) the court acknowledged that "some forms of commercial speech regulation are surely permissible." There, however, it found the justifications the state of Virginia offered for totally suppressing prescription drug advertising insufficient. Id.; see also Bates v. State Bar of Arizona, 433 U.S. 350 (1977)(discussion of proffered justifications for the Arizona Supreme Court's disciplinary rule barring attorney advertising).

We find no cases on point as to the issues raised here. Ward dealt with discriminatory taxation rather than the sorts of restrictions on non-resident insurance agents provided for in article 21.11. The Silver court addressed restrictions on insurance consultants, who unlike insurance agents, and as the court specifically noted, did not "sell insurance either directly or indirectly." Id. at 34. Piper dealt with residence restrictions on lawyers, not insurance agents. The Virginia Pharmacy court expressly limited its holding under the first amendment as to prescription drug price advertising to the profession of pharmacy. Id. at 773 n.25 (observing that "historical" and "functional" distinctions "may require consideration of quite different factors" when dealing with other professions). Moreover, Bates specifically reserved questions as to direct solicitation of clients in its first amendment ruling on attorney advertising. Id. at 366.

We acknowledge that it is possible that a court, upon the taking of testimony and other evidence as to the competing interests of the state and non-resident agents, could find constitutional infirmities in the prohibition on direct solicitation by the latter in article 21.11. But resolution of the issue whether the state has a substantial interest, or is justified, in imposing such restriction on non-resident insurance agents would inevitably involve questions of fact. We in the opinion process are unable to take testimony or other evidence and make findings of fact as a court does, and we would therefore be unable to make a determination on the constitutionality of those provisions.

## S U M M A R Y

Insurance Code article 21.11 prohibits 'direct solicitation of insurance within this state' by a licensed non-resident property and casualty insurance agent. Under that prohibition, such a non-resident insurance agent may not propose to a person located in this state that he buy insurance, unless such 'solicitation' is made through a Texas local recording agent, subject to statutory exceptions. A solicitation by such a non-resident agent from outside the state by mail or telephone to a person located in this state is a 'solicitation . . . within this state' within the meaning of article 21.11. Whether a particular contact constitutes a 'solicitation' is a question of fact.

Whether the prohibition in article 21.11 on direct solicitations by licensed non-resident property and casualty insurance agents violates the constitutional guarantees of freedom of speech or equal protection, or the privileges and immunities clause of article IV, would involve questions of fact that cannot be resolved in the opinion process.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General